**UNITED STATES of America, Appellee,**

v.

**Robert SOBLEN, Appellant.**
**No. 207, Docket 27179.**

United States Court of Appeals Second Circuit.

Argued Feb. 6, 1962.

Decided March 13, 1962.

Certiorari Denied June 25, 1962.

See 82 S.Ct. 1585.

Ephraim London and Joseph Brill, New York City, for appellant. Helen L. Buttenwieser and Jordan Derwin, New York City, on the brief.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for appellee. David R. Hyde and David Klingsberg, Asst. U. S. Attys., of counsel.

Before LUMBARD, Chief Judge, and SWAN and WATERMAN, Circuit Judges.

SWAN, Circuit Judge.

The indictment alleges that the conspiracies began in January 1940 and continued to the return of the indictment on November 29, 1960. Eighteen co-conspirators were listed but were not made defendants. The trial began June 19, 1961, was concluded July 13, and sentence was imposed on August 7—ten years on count 1 and life imprisonment on count 2. Defendant duly appealed and is free on $100,000 bail.

On October 9, 1961 defendant moved under Rule 33, F.R.Crim.P., 18 U.S.C.A., for a new trial on newly discovered evidence. After hearing witnesses Judge Herlands wrote a lengthy opinion denying the motion on November 3. Defendant has also appealed from this order.

The appellant presents four points: (1) insufficiency of the evidence to sustain the jury's verdict; (2) count 1 was barred by the statute of limitations; (3) errors in admitting prejudicial testimony; and (4) error in denying the motion for a new trial.

(1) *Alleged insufficiency of the evidence.*

■ Defendant did not testify nor did he call any witness. He was represented by two experienced trial lawyers. Their strategy was to endeavor by cross-examination of witnesses for the prosecution to prove that the conspiracy, if any, in which defendant took part did not involve getting information about the *national defense* of the United States, but about the Trotskyite wing of the Party Mensheviks, and Germans, living in the United States. Counsel seem to have conceded that defendant was party to a conspiracy to obtain information for Russia respecting matters other than national defense. At least there was no contradiction of testimony that he was paid $100 or $150 per month by co-conspirators for reporting to them during years prior to the time the conspiracy is claimed to have ended in 1945.

The first witness for the prosecution was defendant's brother Jack Soble. He was examined and cross-examined at great length. He testified to meeting Beria of the GPU (Russian Secret Service) in 1940 and to being told by Beria that he wanted him and his brother, Robert, the defendant, "to go abroad to work for us to gather *any* information of *any* value to the Soviet Union." [Italics added.] The quoted purpose certainly cannot reasonably be construed to have excluded the gathering of national defense information. Beria did not say how they would go or where but offered to let their parents and relatives go with

them because the parents are "anti-communists" and will be a "good cover." Of course Jack's conversation with Beria did not commit Robert to the conspiracy, but shortly thereafter Jack visited his brother in Lithuania and learned from him that agents of the GPU had made him a similar proposition. Jack also testified to their leaving Russia via Vladivostok, getting to the United States via Japan and meeting in New York City various "contacts" to whom they made reports. According to Jack's testimony Robert's contact "was Zubilin's wife Helen. He told me this many times on several occasions."[1] He further testified that he had many conversations with Robert "about my work in the Trotskyite field, and his work in the O.S.S."

Mrs. Beker, also listed as a co-conspirator, testified that the defendant caused her to meet Dr. Hirschfeld, head of an O. S. S. section compiling information on European politicians, and told her Hirschfeld worked for the O. S. S.; that she received written reports from him in 1943, 1944 and the early months of 1945 which she passed on to the defendant; that Hirschfeld reported on what some of his co-workers in O. S. S. were doing and the last two or three reports referred to an important military weapon being developed in the far west. Thus there was testimony that the conspirators infiltrated the O. S. S. and secured information from persons working there. That information obtained from O. S. S. employees was classified as secret was demonstrated by the testimony of Mr. Doering, general counsel of O. S. S.

The fact that the source of the information was classified as secret distinguishes this case from United States v. Heine, 2 Cir., 151 F.2d 813, cert. den. 328 U.S. 833, 66 S.Ct. 975, 90 L.Ed. 1608, upon which appellant places reliance. Moreover, the information as to how the O. S. S. carried on its work and who did what was in itself a matter of national defense, as was also the information with respect to the development of an important military weapon in the far west, as to which Mrs. Beker testified. Her testimony, if credited, was alone enough to justify the verdict. Gorin v. United States, 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488, affirming 9 Cir., 111 F.2d 712 is a leading case on the Espionage Act. There, affirming a conviction for transmitting Naval Intelligence reports on Japanese agents in the United States, the Court said, 312 U.S. at page 32, 61 S.Ct. at page 436:

"It is not the function of the court, where reasonable men may differ, to determine whether the acts do or do not come within the ambit of the statute. The question of the connection of the information with national defense is a question of fact to be determined by the jury as negligence upon undisputed facts is determined."[2]

We are satisfied that appellant's point (1) must be overruled.

(2) *The statute of limitations.*

█ The appellant contends that prosecution of the conspiracy charged in count 1 is barred by the statute of limita-

1. Both Zubilin and his wife were listed in the indictment as co-conspirators.

2. Judge Herlands charged the jury as follows:
   "Whether or not the information and documents allegedly sought to be obtained and transmitted by the defendant and his alleged co-conspirators concerned, regarded or was connected with the national defense is a question of fact solely for the determination of you, the jury, taking into consideration all the circumstances of the alleged crime and considering the alleged source, origin, char-

acter and utility of the information and documents. * * * You may also consider the testimony that the names of certain personnel and their functions within O. S. S. were classified information.
   "If you find that the only information or documents which the defendant allegedly gathered and transmitted in this case were lawfully accessible to anyone who was willing to take the pains to find, sift and collate it or them, then the defendant would not be guilty of transmitting or obtaining and receiving national defense information."

tions and that submission to the jury of the barred count requires reversal of the conviction under count 2. Whether or not prosecution under count 1 was barred presents a serious question, but we see no necessity for determining it. Concededly there was no statute of limitations applicable to count 2, and on this count defendant was sentenced to life imprisonment. The sentence imposed on count 1 did not increase defendant's term of imprisonment. Hence, if the count 2 conviction is sustainable, we need not consider the error alleged as vitiating count 1. Barenblatt v. United States, 360 U.S. 109, 115, 79 S.Ct. 1081, 3 L.Ed. 2d 1115; United States v. Bronson, 2 Cir., 145 F.2d 939, 944. And the same rule has been applied in prosecutions for espionage. Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; Pierce v. United States, 252 U.S. 239, 40 S.Ct. 205, 64 L.Ed. 542; Gorin v. United States, 9 Cir., 111 F.2d 712, 722, affirmed 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488.

Assuming *arguendo* that count 1 was barred by the statute of limitations, we cannot see how submission to the jury of that count constituted such prejudicial error as to require reversal of count 2. Appellant has pointed out no proof with respect to count 1 which was not equally admissible with respect to count 2, as was the case in Flemister v. United States, 5 Cir., 260 F.2d 513, on which appellant relies. The obtaining of information for the U. S. S. R. (the conspiracy charged in count 1) was a necessary prerequisite to transmitting it (the conspiracy charged in count 2).

(3) *Alleged errors in admitting prejudicial testimony.*

■ Appellant contends that the trial court committed reversible error in admitting prejudicial testimony relating to defendant and relating to criminal conduct and political activity of the alleged co-conspirators during the periods before the conspiracies began and after they terminated.

Objection was made to the admission of Jack Soble's testimony that he and his brother Robert were members of the Trotskyite wing of the German Communist Party in 1919, when they were studying in Germany. In our opinion there was no impropriety in receiving evidence of the conspirators' activities prior to the beginning of the conspiracy charged in the indictment. The evidence was relevant background to the prosecution's case, to show the motivation and community of interest of the conspirators. How far back one may go is largely a matter within the discretion of the trial judge. See United States v. Dennis, 2 Cir., 183 F.2d 201, 231, affirmed, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. We see no abuse of discretion. Judge Herlands' instructions made it clear to the jury that the evidence was to be considered only for the above-stated purpose, and that the defendant was not on trial for his pre-1940 activities.

■ As to testimony concerning post-1945 events, appellant complains of testimony by Jack Soble that in 1957 he, his wife and Albam, all members of the alleged conspiracy, pleaded guilty to charges of espionage. When Soble took the stand, the prosecutor immediately brought out that he was serving a seven year sentence for espionage of which he had been convicted in 1957 upon a plea of guilty. Counsel for defendant made no objection to this testimony, doubtless because they thought it would impair with the jury his credibility as a witness. On direct examination he was asked no question to which the answer would bring out that his wife and Albam had been indicted with him and had also pleaded guilty. He volunteered this information with respect to Albam. However, no objection or exception thereto was taken by the defendant, and the first questions put to Soble on cross-examination brought out that his wife and Albam were indicted with him, pleaded guilty and received prison sentences. Under these circumstances we do not think defendant can complain of the testimony as such plain error that we should notice it notwithstanding his failure to object,

52(b) F.R.Crim.P. Cf. United States v. Grabina, 2 Cir., 295 F.2d 792.

■■ A more serious error is alleged in the admission of hearsay testimony relating to conversations after 1945, particularly those between Jack Soble and various Russians in 1947. The exception to the hearsay rule, allowing co-conspirators to testify to out-of-court statements, extends only to statements made during the life and in furtherance of the conspiracy; to admit hearsay of conversations after the conspiracy is over is error. Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). The government contends that the 1947 conversations were offered to prove the continuance of the conspiracy. But that, after all, is the disputed fact. Until and unless it is proven that the conspiracy extended past 1945, hearsay subsequent to that time is inadmissible. Especially where, as here, defendant strongly contends that the conspiracy expired at an earlier date, great care must be exercised to prevent confusion between the *purpose* of introducing the evidence and its admissibility—which follows, not precedes, the proof of conspiracy.

This objection, however, can be made to all evidence of the acts and conversations of co-conspirators. As Justice Jackson said in Krulewitch:

" * * * Strictly, the prosecution should first establish *prima facie* the conspiracy and identify the conspirators, after which evidence of acts and declarations of each in the course of its execution are admissible against all. But the order of proof of so sprawling a charge is difficult for a judge to control. As a practical matter, the accused often is confronted with a hodgepodge of acts and statements by others which he may never have authorized or intended or even known about, but which help to persuade the jury of existence of the conspiracy itself. In other words, a conspiracy often is proved by evidence that is admissible only upon assumption that conspiracy existed. The naive assumption that prejudicial effects can be overcome by instructions to the jury, cf. Blumenthal v. United States, 332 U.S. 535, 539, 559 [68 S.Ct. 248, 257 (92 L.Ed. 154)]; all practicing lawyers know to be unmitigated fiction." 336 U.S. 453, 69 S.Ct. 723 (concurring opinion).

However trenchant these criticisms, that question has been decided adversely to petitioner's position since the trial of Thomas Hardy, 24 How.St.Tr. 200 (1794); see Levie, Hearsay and Conspiracy, 52 Mich.L.Rev. 1159, 1162 (1954). And Judge Herlands gave the instructions required by law when he stated, in his charge to the jury, that:

" * * * In considering whether or not defendant was a member of the conspiracy, you must do so—I repeat: in considering whether or not defendant was a member of the conspiracy, as to that particular element, you must do so *without regard to and independently of the statements and declarations of others*. In other words, you must determine the membership of defendant from the evidence concerning his own actions, his own conduct, his own declarations, or his own statements, and his own connection with the actions and conduct of others. However, once you have determined that defendant was a member of the conspiracy, if you so find, using this test, you may then consider as if made by him the statements and declarations of other co-conspirators, made in furtherance of the conspiracy and *during the existence* thereof as alleged." (Italics added.)

Since the jury must have found that the conspiracy continued past 1945 before it could consider the allegedly prejudicial testimony, to admit it was not error.

(4) *The alleged error in denying the motion for a new trial.*

Defendant's motion for a new trial, from the denial of which he also appeals, was based on two grounds. First, he urged that newly-discovered evidence,

contradicting the prosecution witnesses, would probably prove his innocence, and hence was required "in the interests of justice," 33, F.R.Crim.P. Second, he claimed that the government, by suppressing exculpatory evidence, had violated elementary fairness and vitiated the trial.

■ The first piece of evidence claimed to have been suppressed by the government was a medical report concerning Jack Soble by prison physicians. As to this, defendant does not claim that the government hid the evidence, but only that it failed to bring it to the attention of the court and defense counsel. But the government several times referred to our decision in United States v. Zborowski, 2 Cir., 271 F.2d 661, and to Jack Soble's part in that case. There we upset a conviction based on the same Jack Soble's testimony where the government had failed to disclose the reports and certain inconsistencies with grand jury minutes; hence all the facts of Jack's mental condition were, at the time of the trial, a matter of public record. And while the prosecution has the duty to disclose, on its own initiative, exculpatory facts within its exclusive control, United States v. Zborowski, supra, it has no such burden when the facts are readily available to a diligent defender. See, e. g., United States v. Costello, 2 Cir., 255 F.2d 876; United States v. Hiss, S.D.N.Y., 107 F.Supp. 128, affirmed 2 Cir., 201 F.2d 372. Moreover, it seems obvious that defendant did know of his brother's condition; not only was he a psychiatrist who knew that his brother had attempted suicide, but his lawyers, in cross-examination, questioned Jack closely about his marginal sanity. That the jury chose to believe Jack notwithstanding his condition is not our affair.

■ We see no merit in appellant's claim of error based on the prosecution's failure to disclose the whereabouts of Hans Hirschfeld, who was mentioned in Mrs. Beker's testimony. No principle of which we are aware requires the government to give the defense advance information of the location of persons who will be mentioned in the testimony of a witness for the prosecution. After Mrs. Beker testified, F. B. I. reports were made available which placed Hirschfeld in West Berlin and showed that he denied ever having known Mrs. Beker. This information was received close to the end of the trial, but defense counsel made no request for a continuance of the trial so that they might locate Hirschfeld and use him as a witness to impeach Mrs. Beker's credibility. And we note that Hirschfeld, as a prominent aide to the West Berlin government, could have been located with a minimum of time and effort.

■ The second mass of evidence brought forth on motions for a new trial was testimony of persons working in O. S. S. with Hirschfeld, relating to the question of whether Hirschfeld had access to "national defense information." But, as Judge Herlands properly ruled, this evidence was not "newly-discovered." These witnesses were as available during trial as after it; their late appearance was dictated only by the trial strategy of defense counsel, who produced no witnesses or exhibits of their own, but only cross-examined those of the prosecution. And as to the function of Hirschfeld's office in the O. S. S., they did not even cross-examine Doering, the O. S. S. general counsel, at trial.

Further, the new testimony sought to be introduced was merely cumulative and impeaching and such evidence "ordinarily will not support a motion for a new trial," Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 1 L.Ed.2d 1; see United States v. Rutkin, 3 Cir., 208 F.2d 647, 654. And even if the testimony of these new witnesses had been received and believed (thus contradicting the witness Beker), a different result could not be anticipated. Under United States v. Gorin, supra, defendant could be guilty even if the work of the biographical records section was as limited as they testified it was; and under the loose and shifting standards of conspiracy, Soblen could have been found guilty of conspiring to transmit secrets even if he had not

succeeded. See United States v. Abel, 2 Cir., 258 F.2d 485, affirmed, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668. A new trial was properly denied.

For the foregoing reasons both appeals must fail.

We confess that the sentence of life imprisonment seems to us somewhat harsh but the sentence is a matter with which we may not concern ourselves since it does not exceed what the statute authorizes. Nor has the appellant argued that the sentence does concern us.

Accordingly the judgment of conviction and the denial of the motion for a new trial are both affirmed.