**James H. HAMPTON, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 73–1841.**

United States Court of Appeals, Tenth Circuit.

Argued Aug. 21, 1974.

Decided Oct. 23, 1974.

Rehearing Denied Nov. 29, 1974.

Gerald Sawatzky, Wichita, Kan. (James H. Hampton, appellant pro se on the brief), for petitioner-appellant.

Givens L. Adams, Asst. U. S. Atty. (William R. Burkett, U. S. Atty., Oklahoma City, Okl. on the brief), for respondent-appellee.

Before HILL and McWILLIAMS, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

This is an appeal from the denial, without an evidentiary hearing, of post-conviction relief under 28 U.S.C. § 2255. The petitioner, James H. Hampton, is presently in federal custody under a ten year sentence entered upon his 1970 conviction of violation of 18 U.S.C. § 2314, interstate transportation of a falsely made and counterfeit security, specifically, a cashier's check drawn on the Southside National Bank, St. Louis, Missouri, in the amount of five hundred dollars, dated January 9, 1970, payable to Wesley Gene Smith.[1] His direct appeal, which did not raise the contentions now urged, was unsuccessful. Hampton v. United States, 458 F.2d 29 (10th Cir. 1972).

In order that the petition before us may be properly appraised it is necessary to set it in context. The proofs adduced at the trial were not complicated. The defendant was positively identified by the Vice-President and cashier of the Shepherd Mall State Bank, and a Sears Roebuck cashier, as having endorsed in their presence cashier's checks, using the name Wesley Gene Smith, and presenting for identification, Smith's driver's license and an A. T. & T. credit card. He was also identified by other employees of the bank, Sears and a neighboring store as having attempted to cash the same or similar checks. Mr. Wesley Smith himself testified that his wallet, with identification, had been stolen from him. In defense a handwriting expert

testified that the endorsement on the two checks before her, the checks cashed at the Shepherd Mall State Bank, and the Sears store, were not written by the person whose exemplars had been submitted to her as those of the defendant. In addition defendant submitted the testimony of an East St. Louis policeman who, a month later, had arrested one Jimmy Poe on a bad check charge. Poe was of the same general build as defendant and carried the same Wesley Gene Smith identification papers previously mentioned, the Government in turn suggesting a possible sale thereof to Poe as "a common modus operandi in this regard." After the instructions, as to which no issue is presented, the jury returned a verdict of guilty.

The precise point in issue arises from the fact, conceded by the defendant, that during the trial it became known that the Government's Exhibit 1, the cashier's check presented to the Shepherd Mall State Bank, the endorsement of which by defendant had taken place in the presence of the cashier, had been subjected to laboratory examination. As the defendant acknowledges in his brief: "The trial transcript clearly shows that the counterfiet (sic) security underwent extensive testing by the Governmant (sic) (tr. pgs. 46 thru 48, 51, 68, 151, 152, 153)." The Government did not use such reports nor were they requested by the defendant. Upon motion by the defendant the Government had been ordered to "furnish to the defendant's counsel any written signed statement of any of your witnesses so that he can read and understand when you put that witness on, and he's ready to cross examine the witness to test his statement and knowledge." No complaint is made of noncompliance with this order and no further request or demand was made by petitioner, or objection made to information furnished. It is clear that neither the Jencks Act (18 U.S.C. § 3500) nor the Court's order applied to the subject report in view of

---

* TALBOT SMITH, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The sentence, the maximum allowable under 18 U.S.C. § 2314, was imposed pursuant to 18 U.S.C. § 4208(a)(2).

the fact that the person responsible for its preparation was not called.

But the defendant's petition under § 2255 made an additional charge, going beyond mere noncompliance with Rule 16 or the Court's order, namely that the Government had at the time of trial "a detailed report from the laboratories of the Federal Bureau of Investigation which stated that after expert and chemical analysis was made of the counterfeit security, your petitioner's handwriting and fingerprints did not appear anywhere on said counterfeit security," placing reliance upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and kindred cases.

The broad charges thus made were not documented in any way, nor their source disclosed. But in petitioner's brief on appeal the obvious deficiencies are remedied. We are told (here the petitioner *pro se* is referring to himself in the third person) that "After Hampton commenced service of the sentence imposed in this case, he was approached by two agents from the Federal Bureau of Investigation and shown copies of certain reports from the Government's criminal laboratories that would conclusively show that he was not guilty of the crime for which he is presently being confined."

The United States Magistrate conducted a preliminary review[2] of the petition presented and recommended its denial to the District Judge. The latter, upon review thereof, held in part that "The files and records conclusively show that petitioner is not entitled to relief on his allegation that the Government failed to disclose evidence which would have been favorable to the petitioner for the reason that the petitioner filed no motions for discovery under Rule 16, Federal Rules of Criminal Procedure, or pursuant to the requirements of Brady v. Maryland, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963)."

Upon these facts we are clear that it is not enough, to entitle a petitioner to either a hearing or relief under § 2255, that he simply make a charge of constitutionally offensive conduct against agents of the Government. The assertions made are subject to careful scrutiny by the District Court in the light of all of the surrounding circumstances. As the Supreme Court held in Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1961):

What has been said is not to imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not strip the district courts of all discretion to exercise their common sense.

Addressing the same point it was held shortly thereafter in Malone v. United States, 299 F.2d 254, 255–256 (6th Cir. 1962), in denying a motion to vacate a sentence, that

Section 2255 of Title 28 U.S.C. provides in part as follows:

"A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

"The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

It is not the law that in every case where the movant may set forth a claim which appears to be good on paper although manifestly false in fact and frivolous, the District Court is nevertheless obliged to grant him an oral hearing. United States v. Thomas, 291 F.2d 478 (CA6); Johnson v. United States, 239 F.2d 698 (CA6), cert. denied 354 U.S. 940, 77 S.Ct. 1404, 1 L.Ed.2d 1539.

It is necessary that the movant substantiate his conclusions by allegations of fact with some probability of verity. O'Malley v. United States,

---

2. 28 U.S.C. § 636(b)(3).

285 F.2d 733 (CA6); Stephens v. United States, 246 F.2d 607 (CA10).

In the present case the District Judge who passed upon the second motion to vacate presided at the criminal trial and also heard the first motion. We believe that he was thoroughly familiar with the record and files of the case.

Here the allegations made are so vague as to cast the most serious, if not decisive, doubts as to their probity. It is noteworthy that the allegations as to the two F.B.I. agents were not made in the first instance to the District Court but were reserved for consideration at this level of the judicial process. As opposed to the allegations made by petitioner in *Machibroda, supra* 368 U.S. at 489, 82 S.Ct. 510, where the petitioner's charges as to the Assistant United States Attorney were "identified as to time and place," here the identity of the alleged agents is not disclosed, nor the time of their alleged visit, nor the purpose thereof, nor the motivation therefor. The incident described is palpably incredible, made not the more trustworthy by the manner in which it reaches us.

█ But we do not place decision on this ground, however sound. The fact of the matter is that as petitioner himself concedes, *supra,* he was well aware during the trial that a test of some kind had been made upon the check in question, yet he made no request for the production of the results of the test at trial. In this situation a post-conviction claim of error comes too late.

The purpose of the *Brady* rule is not to provide a defendant with a complete disclosure of all evidence in the government's file which might conceivably assist him in preparation of his defense, but to assure that he will not be denied access to exculpatory evidence *known to the government but unknown to him.* [Emphasis added.]

United States v. Ruggiero, 472 F.2d 599, 604 (2nd Cir.), cert. denied, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973).

A similar observation is found in United States v. Purin, 486 F.2d 1363, 1368 n. 2 (2nd Cir. 1973), cert. denied, 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974):

Even where evidence falls within the rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), however, the Government need not *sua sponte* give notice to the defense where the accused has knowledge of the evidence (Wallace v. Hocker, 441 F.2d 219, 220 (9th Cir. 1971); see United States v. Soblen, 301 F.2d 236, 242 (2d Cir.), cert. denied. 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962)) and here no pretrial discovery motions were made.

We note, in passing, that precisely the same allegation with respect to an F.B.I. report was made in Nash v. State of Maryland, 371 F.Supp. 801 (D.Md.1973). In petitioning for habeas corpus relief, arising from conviction of charges of uttering counterfeit checks, petitioner charged for the first time "The prosecution failed to introduce into evidence an FBI report favorable to him." In denying relief the District Judge noted that "The prosecution, however, is not required to introduce evidence that is equally available to the defense," where defense counsel at trial was aware of the report. The court held that the defendant's " 'Brady-type' allegation is patently devoid of merit and is hereby rejected."

The reason for the rule, of course, is to prevent the sandbagging of the Government by a defendant's deliberate withholding of request for production. If aware, as was this defendant, of the existence of a report, he may not request the report and gamble on the verdict. If he loses before the jury and on direct appeal, he may then come before us on a § 2255, making any allegation with respect to the contents of the report suggested by his ingenuity. Neither the applicable rules nor the decided cases countenance placing such a premium upon defendant's failure to request examination of a known report.

In the view we have taken of the facts in this record we do not deem it necessary to analyze in detail the *Brady* doctrine or the variations thereon, discussed by Judge Friendly in United States v. Keogh, 391 F.2d 138 (2nd Cir. 1968). Upon the record here made, which we have considered in detail, the District Court, addressing its rulings principally to defendant's failure to move either under Rule 16 or the teachings of *Brady, supra,* held that petitioner was entitled to no relief on this portion of his petition.[3] In this there was no error.

Petitioner also asserts that his case "is identical in every way to United States v. Tucker, 404 U.S. 443 [92 S.Ct. 589, 30 L.Ed.2d 592] (1972)" in that information contained in the presentence report with respect to prior convictions was incorrect and that he is entitled to a re-sentencing. The Government does not deny errors in the list of prior convictions.[4] The District Court, however, in ruling upon the § 2255, after consideration of these matters, held that "The matters in the presentence report now criticized by the petitioner were not determinative matters in the imposition of sentence and upon present reconsideration of all relevant and proper information and circumstances and without consideration of such matters the sentence is appropriate and should stand." Such holding by the District Court, upon review, is determinative of the matter upon the record before us. Johnson v. United States, 485 F.2d 240, 242 (10th Cir. 1973); United States v. Green, 483 F.2d 469 (10th Cir.), cert. denied, 414 U.S. 1071, 94 S.Ct. 583, 38 L.Ed.2d 477 (1973).

Finally, petitioner asserts that the United States Magistrate was also the presentence investigator "who investigated and prepared the presentence report in this case" and was biased against him. The Government submits an affidavit from the Magistrate denying the charge and asserting that he "has never seen or met the petitioner." Without expressing any opinion as to the materiality of such charge we simply note that this issue was raised for the first time on this appeal and we will, therefore, not give it consideration here. Fitts v. United States, 376 F.2d 516 (10th Cir. 1967); Williams v. United States, 323 F.2d 90, 92 (10th Cir. 1963).

Affirmed.

---

3. We do not overlook, but do not reach, the point made that there is a question as to the materiality of the report allegedly suppressed. Under the statute, *supra,* it was not necessary to be established that the defendant forged the instrument which he "caused" to be transported in interstate commerce but only that he knew the security to be falsely made. Kreuter v. United States, 376 F.2d 654 (10th Cir. 1967), cert. denied, 390 U.S. 1015, 88 S.Ct. 1267, 20 L.Ed.2d 165 (1968); Cloud v. United States, 361 F.2d 627 (8th Cir. 1966).

4. It does, however, point out that the presentence report was furnished counsel prior to sentencing with the order that errors therein be brought to the attention of the court. None was cited by either the defendant or counsel at sentencing. The report contains the notation that "The defendant did not cooperate at all in the preparation of the pre-sentence report, and all the information contained herein was not confirmed nor denied by the defendant."