**Ramon Ramos LUGO, Petitioner,
Appellant,**

v.

**Miguel Gimenez MUNOZ, Etc., et al.,
Respondents, Appellees.**

**No. 81–1649.**

United States Court of Appeals,
First Circuit.

Argued Feb. 5, 1982.
Decided June 22, 1982.

Arturo Aponte Pares, San Juan, P. R., with whom Blas R. Ferraiouli, San Juan, P. R., was on brief, for petitioner, appellant.

Federico Cedo Alzamora, Asst. Sol. Gen., Dept. of Justice, San Juan, P. R., with whom Hector A. Colon Cruz, Sol. Gen., San Juan, P. R., was on brief, for respondents, appellees.

Before COFFIN, Chief Judge, GIBSON,[*] Senior Circuit Judge, and BOWNES, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

In 1977, petitioner Ramon Ramos Lugo was convicted of first-degree murder in the Superior Court of Puerto Rico. Petitioner here appeals the district court's denial of his petition for a writ of habeas corpus, 28 U.S.C. § 2254. He alleges (a) that the Government violated his right to due process by suppressing certain evidence favorable to him, (b) that, on appeal, he was entitled to a complete transcript of the oral evidence presented at his trial, and (c) that the court erred in its jury instructions regarding accomplice testimony. For the reasons hereinafter set forth, we affirm.

Lugo was convicted of murder for brutally killing a young man named Juan Ramon Cruz on the night of March 24, 1973. The story which emerged at trial implicated two young men besides the petitioner in the murder. The three men were tried together in the Puerto Rico court. Only one eyewitness of the murder testified at trial, one Luis Antonio Toro Perez, also known as "Yaco." The testimonial evidence offered by Yaco stands unrefuted, except for mere minor discrepancies and some understandable inconsistencies. We will briefly recapitulate Yaco's testimony as to the night in question.

### I.

Petitioner and one of his co-defendants, Roberto Diaz Suarez, met at an athletic park. Yaco was also at the park. Lugo and Suarez had some rum which they offered to Yaco. When Yaco refused the rum, the two forced him to drink it.

In a short while, Yaco left the park to go home. Lugo and Suarez followed him. When the three of them reached a bridge, Yaco told the two he wanted to go home to sleep. Lugo and Suarez would not let Yaco go. A car approached the bridge, blinking its lights as if to give some kind of signal. The car pulled up to them and Yaco recognized the two young men who were in it. The driver was Francisco Egipciaco, the third co-defendant in petitioner's trial, and beside him was Juan Ramos Cruz, the man who was later killed. Lugo and Suarez got into the car with Egipciaco and Cruz and forced Yaco to get in also.

The five drove first to a bar where they each had several beers. Next they went to a market and bought some food. They then continued to a nearby beach. Once on the beach, Cruz got out of the car to urinate. Egipciaco handed Lugo the car keys. At this point Yaco wanted to get out of the car but Egipciaco aimed a gun at him and told him that he couldn't. Lugo opened the trunk of the car and removed a tire jack and a socket wrench. At that point, Egipciaco told Yaco to get out of the car, still aiming the gun at him.

Suarez held Cruz while Lugo hit him over the head with the tire jack. Both Suarez and Lugo continued to hit Cruz after he fell to the ground. Egipciaco kept the gun aimed at Yaco.

Suarez and Lugo put the victim in the trunk of the car. They later deposited his body by the side of the road. They ordered Yaco to go to the house of Cruz's aunt to tell her where her nephew was. The three co-defendants continually threatened Yaco to get him to do what they ordered. Yaco went to Cruz's aunt's house and told her where the nephew was, but she did not believe him.

[*] Hon. Floyd R. Gibson, Senior Circuit Judge, U. S. Court of Appeals, Eighth Circuit, sitting by designation.

The three co-defendants took the deceased's wallet, gave Yaco $39 out of it, and kept the rest. They then threw the wallet in the alley where Yaco lived. Yaco testified that the three discussed that since Yaco was "the most stupid of them" the authorities would believe Yaco had killed Cruz.

On cross-examination, Yaco admitted that a first statement given by him to the authorities, on March 25, 1973, had been false. He said that he didn't tell the truth at that time because he had been threatened and he was bewildered and too frightened.

## II.

■ Petitioner argues that the prosecutor had the duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny to inform him that a Puerto Rico court had ordered psychiatric evaluations of the prosecution's main witness, Yaco, in a case which was pending against him. Yaco had been accused of grand larceny, a felony, on September 6, 1972, nearly seven months before the events that culminated in petitioner's conviction in the case now before us. At Yaco's preliminary hearing on the larceny charge, the court found reasonable grounds to believe that Yaco was mentally incompetent to stand trial. On October 4, 1972, the court ordered that Yaco be submitted to a psychiatric examination.[1] This information was not given by the prosecutor to the petitioner at any time before or during the murder trial.

Petitioner argues that he was thereby deprived of the right to impeach the witness on two grounds: (1) being accused of a felony, and (2) being mentally incompetent. Petitioner argues that the deprivation of his right to cross-examine the witness violated his right to a fair trial. We cannot agree.

In *Brady v. Maryland, supra,* the court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196. In other cases, however, the Supreme Court and other courts have drawn a distinction between evidence which is exclusively within the prosecutor's control and knowledge and that which is not. In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court held:

> [T]he fact that such evidence was available to the prosecutor and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial.... If the standard applied to the usual motion for a new trial based on newly discovered evidence were the same when the evidence was in the State's possession as when it was found in a neutral source, there would be no special significance to the prosecutor's obligation to serve the cause of justice.

at 111, 96 S.Ct. at 2401. And, in the same opinion, the Court cited with approval the California Supreme Court when it wrote that prosecutors "are under no duty to report sua sponte to the defendant all that they learn about the case and about their witnesses. *In re Imbler,* 60 Cal.2d 554, 569, 35 Cal.Rptr. 293, 301, 387 P.2d 6, 14 (1963)." 427 U.S. at 109, 96 S.Ct. at 2400.

In *United States v. Soblen,* 301 F.2d 236 (2d Cir.), *cert. denied,* 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962), a case decided before *Brady,* the court held that while the prosecution had the duty to disclose exculpatory facts within its exclusive control, it had no such burden when the facts were readily available to a diligent defender. 301 F.2d at 242. In that case, the facts which were alleged to have been suppressed by the Government were a matter of public record.

In this case too, the facts which petitioner alleges to have been suppressed by the Government were a matter of public record.

[1] Petitioner and respondents have stipulated that no evidence of the results of the examination can be found.

The purpose of the *Brady* rule is not to provide a defendant with a complete disclosure of all evidence in the government's file which might conceivably assist him in preparation of his defense, but to assure that he will not be denied access to exculpatory evidence *known to the government but unknown to him.* [Emphasis added.]

*United States v. Ruggiero,* 472 F.2d 599, 604 (2d Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973), *as quoted in Hampton v. United States,* 504 F.2d 600, 603 (10th Cir. 1974), *cert. denied,* 421 U.S. 917, 95 S.Ct. 1578, 43 L.Ed.2d 783 (1975). *See also United States v. Purin,* 486 F.2d 1363, 1368 n.2 (2d Cir. 1973), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974). Since the information at issue here was available to the defense attorney through diligent discovery, we find that the prosecutor's omission was not "of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Agurs,* 427 U.S. at 108, 96 S.Ct. at 2400.

### III.

▇ Petitioner next contends that his constitutional right to due process was denied when he was supplied with a narrative exposition of the trial proceedings at issue here rather than a verbatim transcript. Petitioner argues that, under Puerto Rico law, at the time of his trial he had an absolute right to a complete transcript of the trial for his record on appeal. While petitioner's appeal was pending, the Supreme Court of Puerto Rico issued new rules of the court. Under the new rules, the Supreme Court has the discretion to deny a complete transcript to an indigent appellant as long as a narrative summary is provided. Under this rule, petitioner was provided only with a narrative exposition of his trial. We find that there was no constitutional violation in the review afforded the petitioner by Puerto Rico's rules of the court.

▇ A complete verbatim transcript does not have to be provided to an indigent defendant in order to afford an adequate and effective appellate review.

Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, *a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes,* or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript.... [T]he fact that an appellant with funds may choose to waste his money by unnecessarily including in the record all of the transcript does not mean that the State must waste its funds by providing what is unnecessary for adequate appellate review.

*Draper v. Washington,* 372 U.S. 487, 495–96, 83 S.Ct. 774, 778–79, 9 L.Ed.2d 899 (1963) (emphasis added). *See also Mayer v. Chicago,* 404 U.S. 189, 194–95, 92 S.Ct. 410, 414–15, 30 L.Ed.2d 372 (1971); *Moore v. Wainwright,* 633 F.2d 406, 408 (5th Cir. 1980); *Ennis v. LeFevre,* 560 F.2d 1072, 1074 (2d Cir. 1977), *cert. denied,* 435 U.S. 976, 98 S.Ct. 1625, 56 L.Ed.2d 70 (1978). The narrative summary supplied to petitioner certainly was complete enough to serve as an adequate substitute for the transcript.

### IV.

▇ Finally, the petitioner urges that the jury should have been instructed that in order to convict him there had to be more evidence of guilt than just the testimony of an accomplice. Petitioner argues that the question of whether Yaco was a willing accomplice in the crime should have been submitted as a jury issue to the jury for its decision.

Petitioner asserts that his right to have a jury decide whether Yaco was an accomplice is based on the Rules of Criminal Procedure for the Commonwealth of Puerto Rico and Puerto Rican case law. The Supreme Court of Puerto Rico, on direct appeal, found that, on the facts presented, Yaco was not an accomplice as a matter of

law. Thus, the highest court of Puerto Rico found that Puerto Rican law does not create a right to have a jury decide whether a witness is an accomplice. A federal court has no power to reinterpret the law of a state or territory when there is a recent declaration by the highest court of that state or territory.

There is no federal right to have corroboration of an accomplice's testimony. Therefore the Supreme Court of Puerto Rico did not violate the federal Constitution in denying petitioner the right which he claims. The lack of deprivation of a federal right precludes the award of habeas corpus relief by the district court.

### V.

In conclusion, though there were certain inconsistencies in Yaco's testimony, the evidence presented by Yaco, along with other evidence such as certain physical evidence relating to Egipciaco's car, was properly submitted to the jury. The evidence stood unrefuted and petitioner was convicted. We find no errors of constitutional magnitude in the record before us and thus we affirm the district court's denial of the writ of habeas corpus.