UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, Friedman and Callins
Argued at Salem, Virginia

DERRICK LASHAWN WRIGHT

v.      Record No. 0566-21-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE WESLEY G. RUSSELL, JR.
MAY 10, 2022

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Heath L. Sabin (Sabin Law Office, P.C., on brief), for appellant.

Ken J. Baldassari, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


Following a bench trial, the Henry County Circuit Court convicted appellant, Derrick

Lashawn Wright, of three counts of distribution of a Schedule I or II controlled substance, second or

subsequent offense, in violation of Code § 18.2-248.  On appeal, Wright asserts that the trial court

abused its discretion in denying his motion for a mistrial and erred in finding the evidence sufficient

to support the convictions.  For the following reasons, we disagree and affirm his convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

BACKGROUND[2]

In the summer of 2018, Patrick Golden was working as a paid confidential informant for the Henry County Sheriff's Office. On July 20, July 26, and August 1, Golden met with investigators from the sheriff's office to assist with controlled purchases of cocaine from an individual known to him as "Big D," who was later identified as Wright. Golden had known "Big D" for "a couple of years." Henry Oakes also was working as a confidential informant for the sheriff's office and served as Golden's driver for each controlled buy.

Each controlled purchase followed the same procedure. Golden and Oakes first met with the investigators at an agreed meeting place. Oakes testified that his sole purpose was to drive Golden to each controlled buy and drive him back. The investigators searched Golden, Oakes, and Oakes' car to confirm that no contraband was present. Golden was outfitted with a recording device and given buy money. Investigators then followed Oakes and Golden to Southland Drive and watched the feed from Golden's recording device in real time. Because Southland Drive is a dead-end street, the investigators did not follow Oakes and Golden onto that road, but "pick[ed] back up behind them" when they left Southland Drive and returned to the meet location. Each time, Golden gave the purchased cocaine and his recording device to the investigators who again searched Golden, Oakes, and Oakes' car for contraband. Oakes never left his car, did not see Wright on any occasion, and did not see the cocaine Golden purchased.

Before the first purchase on July 20, 2018, Henry County Sheriff's Investigator Brummitt searched Golden's "outer clothing" and his shoes, but he did not "search inside [Golden's] clothing," or look "inside his underwear or down low in his crotch." Brummitt also searched Oakes. Oakes then drove Golden to Wright's house on Southland Drive, where Golden then

---

[2] "In accordance with familiar principles of appellate review, we recite the facts in the light most favorable to the Commonwealth, the prevailing party at trial." *Bryant v. Commonwealth*, 70 Va. App. 697, 702 (2019).

entered Wright's home, bought the drugs, and left. The transaction was captured on Golden's recording device; the recording depicted a man with facial hair selling cocaine to Golden. No one else was present during the transaction. At trial, the trial court viewed the recording and Golden identified Wright as the person who sold him the cocaine.

To make the July 26, 2018 purchase, Golden called Wright and ordered "a ball," which Golden explained was an "eight ball of cocaine." Golden confirmed that Wright's phone number was the number he called, and he recognized Wright's voice as they spoke. The phone call was made in the investigators' presence and recorded, and the recording was played at trial. After Golden ordered the cocaine, Brummitt searched his "outer clothing garments" and his shoes. He also searched Oakes. Oakes then drove Golden to Southland Drive and parked "right behind [Wright's] vehicle" on the street. Golden left Oakes' car and got into Wright's car. Golden purchased the cocaine from Wright and then returned to Oakes' car. A recording of the transaction was captured on Golden's recording device and played at trial. Wright is not depicted in the recording, but Golden identified him as the person who sold him the cocaine on that occasion.

The third and final purchase occurred on August 1, 2018. Before meeting with the investigators, Golden communicated with Wright via "text messages and calls, that day." After Golden arranged to purchase cocaine, Investigator Foley searched him, "start[ing] at the head and work[ing] [his] way to the feet." Foley turned Golden's pockets "inside out," and he searched "all outer clothing and socks and shoes." Foley searched Oakes in the same manner. Oakes then drove Golden to Southland Drive and parked on the street. Golden entered Wright's vehicle and purchased an "eight ball" of cocaine. The transaction was recorded and played at trial. The video shows Wright selling cocaine to Golden. Golden confirmed that Wright was the person on the video selling him the cocaine.

On cross-examination, Golden repeatedly testified that he could not recall certain details of each transaction. For example, he could not recall who he interacted with at the sheriff's office, and he did not recognize any of the police witnesses. He could not recall how much he was paid or how he was compensated for his services. He could not remember Wright's street address. Golden also described search procedures that differed from those described by investigators. Golden conceded that he was buying cocaine from another individual, Ja.B.,[3] on Southland Drive during the same time frame.

At the conclusion of the evidence,[4] Wright moved to strike the evidence as insufficient "at least, on the first two [indictments for the July 20, 2018 and July 26, 2018 controlled purchases] as you can't identify who is on the video; that the witness, we would argue, the Confidential Informant, is very unreliable." He also moved to strike "on the plan of the search." Wright also moved for a mistrial for an alleged *Brady*[5] violation because "there was another individual on that road who they were buying from at the same time with the same informant"; he argued that the information about the other transactions was exculpatory evidence that the Commonwealth had not disclosed to the defense. The trial court denied both motions.

In his closing argument, Wright contended that the evidence failed to prove he was the person who sold Golden the cocaine. Wright argued that Golden gave inconsistent testimony and had perjured himself. Wright also asserted that the search of Golden was "cursory" and did not negate the possibility that Golden already had the cocaine on his person before each transaction. The trial court found that Golden "was not the most cooperative witness" but concluded that the

---

[3] In the course of the proceedings below, both Golden and Wright identified others who allegedly were selling drugs on Southland Drive. Because those individuals are not charged in this case and might deny the allegations if they were, we identify them only in abbreviated form.

[4] Wright did not present any evidence at trial.

[5] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Commonwealth presented sufficient evidence to corroborate Golden's testimony and convicted Wright on all three charges.

Post-trial, Wright renewed his motion for a mistrial based on the alleged *Brady* violation. At the post-trial hearing on the motion,[6] Wright testified that other individuals who lived on Southland Drive were involved in, or charged with, drug transactions when these offenses occurred. Wright specifically identified Je.B. and D.L. as people who sold drugs on Southland Drive. Je.B. also testified and confirmed that he had been charged with distributing drugs to Golden from his Southland Drive address. Je.B. stated that, to his knowledge, D.L. had been convicted of selling drugs from his own address on Southland Drive in 2018. The trial court denied Wright's post-trial motion for a mistrial. This appeal followed.

ANALYSIS

I. Motion for Mistrial

"The decision whether to grant a mistrial motion is a matter submitted to the circuit court's sound discretion." *Castillo v. Commonwealth*, 70 Va. App. 394, 445 (2019) (quoting *Lewis v. Commonwealth*, 269 Va. 209, 213 (2005)). If the trial court commits an error of law, though, then "it 'by definition abuses its discretion.'" *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020) (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017)). In ruling on a motion for a mistrial, the trial court "must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights [have] been so indelibly prejudiced as to require a new trial." *Castillo*, 70 Va. App. at 445 (quoting *LeVasseur v. Commonwealth*, 225 Va. 564, 589 (1983)). "Unless we can say as a matter of law that this determination was wrong, it will not be disturbed on appeal." *Id.* (quoting *LeVasseur*, 225 Va. at 589).

---

[6] The Honorable G. Carter Greer presided over the post-trial motion.

Wright asserts that the trial court erred in refusing to grant a mistrial because the Commonwealth failed to meet its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, he argues that if the Commonwealth had disclosed the fact that Golden "was conducting undercover buys with at least three other individuals on Southland Drive," it is "possible and likely that had this information been disclosed that one or more of these cases would have been dismissed." We disagree with the premise of Wright's argument because Wright failed to establish a *Brady* violation.

"Under *Brady*, 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Mercer v. Commonwealth*, 66 Va. App. 139, 146 (2016) (quoting *Brady*, 373 U.S. at 87). There are three components to establishing a *Brady* violation:

> a) The evidence not disclosed to the accused must be favorable to the accused, either because it is exculpatory, or because it may be used for impeachment; b) the evidence not disclosed must have been withheld by the Commonwealth either willfully or inadvertently; and c) the accused must have been prejudiced.

*Garnett v. Commonwealth*, 275 Va. 397, 406 (2008) (quoting *Workman v. Commonwealth*, 272 Va. 633, 644-45 (2006)). "The accused has the burden of establishing each of these three components to prevail on a *Brady* claim." *Church v. Commonwealth*, 71 Va. App. 107, 117 (2019) (quoting *Mercer*, 66 Va. App. at 146). We will not disturb the trial court's factual findings on a *Brady* motion "absent clear error." *Id.* at 116. "[W]e review the trial court's legal conclusions *de novo*." *Id.*

Wright relies on the fact that the Commonwealth did not disclose that Golden was conducting undercover buys with other individuals on Southland Drive.[7] It is well established that the Commonwealth does not violate *Brady* by failing to disclose information the "substance" of which is already "known to the defense." *Cherrix v. Commonwealth*, 257 Va. 292, 302-03 (1999). Additionally, "*Brady* is not violated, as a matter of law, when impeachment evidence is made 'available to [a] defendant[] during trial' if the defendant has 'sufficient time to make use of [it] at trial.'" *Church*, 71 Va. App. at 119-20 (alterations in original) (quoting *Commonwealth v. Tuma*, 285 Va. 629, 635 (2013)).

It is apparent from the record that Wright knew, prior to trial, that Golden had purchased narcotics from others on Southland Drive during the relevant time frame. In fact, he used that information during his cross-examination of Golden, who admitted that he had been buying drugs from Ja.B. on Southland Drive at the time of the instant offenses. Wright also alluded to the information while cross-examining Brummitt, asking him if Golden was working with other suspects on Southland Drive. Wright then used the evidence, including Golden's admission that he had purchased drugs from another on Southland Drive, in arguing his hypothesis that someone else had sold Golden the cocaine. Wright also referenced this information in his first motion for a mistrial. Thus, notwithstanding his assertions to the contrary, Wright clearly was aware of information he claims the Commonwealth failed to disclose and he actually made use of it at trial.

With respect to Je.B. and D.L., we conclude that the record fails to show Wright could not have obtained their names before trial through the exercise of diligence. "[W]here the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine."

---

[7] We assume, without deciding, that the information allegedly withheld from Wright was favorable to his defense as potential impeachment evidence. Thus, we limit our analysis to the remaining *Brady* requirements.

- 7 -

*Epperly v. Booker*, 997 F.2d 1, 10 (4th Cir. 1993) (quoting *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990)). That is, a *Brady* challenge will not succeed where the evidence is "'available from other sources' through the efforts of 'a diligent defense attorney' through discovery, independent expert testimony, or *cross-examination* . . . ." *Id.* at 9 (emphasis added) (quoting *Wilson*, 901 F.2d at 380). *See also Castillo v. Johnson*, 141 F.3d 218, 223 (5th Cir. 1998) ("Under *Brady*, the prosecution has no obligation to produce evidence or information already known to the defendant, or that could be obtained through the defendant's exercise of reasonable diligence."). This principle applies because the "limited purpose of the *Brady* rule is 'to assure that [the defendant] will *not be denied access* to exculpatory [or impeachment] evidence *known to the government but unknown to him.*'" *Tuma*, 285 Va. at 635 (emphasis and alterations in original) (quoting *Lugo v. Munoz*, 682 F.2d 7, 10 (1st Cir. 1982)). Here, soon after trial, by identifying them at his post-trial hearing, Wright demonstrated he had the ability to discover the names of Je.B. and D.L. without the assistance of the Commonwealth. Consequently, because the record shows that Wright had the means to obtain (and, in fact, did obtain) the purportedly favorable information without the assistance of the Commonwealth, he has not established an entitlement to the relief he seeks.

Wright further claims he was prejudiced because, if the information regarding other dealers on Southland Drive had been disclosed, the case "might have turned out different." Prejudice ensues "within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Id.* (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)). Guided by this principle, we find that there was not a reasonable probability of a different result because Wright actually used similar information at trial to no effect. After considering Wright's argument in the context of Golden's admissions at trial, the trial court found it unavailing. *Cf. Deville v. Commonwealth*, 47 Va. App. 754, 757 (2006) ("Prejudice cannot

be shown where, as here, 'the trial judge was the trier of fact and, upon learning of the undisclosed information,' rules unequivocally that the impeachment evidence 'would have had no impact' on the factfinding underlying the defendant's conviction." (quoting *Stroik v. State*, 671 A.2d 1335, 1340 (Del. 1996))). Given the similarity between the information that Wright claims was withheld and the information he actually used as impeachment evidence at trial, we conclude that there is not "a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Tuma*, 285 Va. at 635 (quoting *Smith*, 565 U.S. at 75).

In sum, because Wright failed to show that the Commonwealth suppressed otherwise unavailable information favorable to his defense or that he suffered any prejudice, we find no error in the trial court's denial of Wright's mistrial motion.

## II. Sufficiency of the evidence

Wright challenges the sufficiency of the evidence, arguing that Golden's testimony was "wholly incredible" and not to be believed. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions

reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Wright asserts that Golden cannot be believed as a matter of law. Wright argues that Golden's trial testimony as to each of the transactions was "deliberately vague and evasive and essentially deceptive." Wright emphasizes Golden's inability to recall which officers he worked with. He also notes that Golden was evasive about what payment or compensation he received, could not provide Wright's street address, and described a search procedure that differed from the investigators' descriptions. Wright argues that, in fact, Golden's "favorite answer to just about every question on cross-examination was I don't recall." Additionally, Wright contends that the pre-purchase search procedures were cursory because investigators did not check inside Golden's clothing or do "a full body search checking all clothing or body parts." He finds it significant that Oakes did not see the purchased cocaine after each transaction.

Determining witness credibility "is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he trier of fact is free to believe or disbelieve, in whole or in part, the testimony of any witness." *Rams v. Commonwealth*, 70 Va. App. 12, 38 (2019) (citing *Carosi v. Commonwealth*, 280 Va. 545, 554-55 (2010)). "The fact that a witness makes inconsistent statements in regard to the subject matter under investigation does not render his testimony nugatory or unworthy of belief." *Swanson v. Commonwealth*, 8 Va. App. 376, 378 (1989). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Consequently, . . . '[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Id.* (second alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)).

Although the trial court found that Golden was "not the most cooperative witness," it nevertheless credited his testimony that Wright sold him cocaine on the three occasions in question. "When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Towler*, 59 Va. App. at 291 (quoting *Swanson*, 8 Va. App. at 379). Accordingly, we defer to the trial court's credibility determination on appeal.

Moreover, video and other evidence corroborated Golden's testimony. Wright concedes he is the individual depicted on the video in the third transaction. The recording of the first transaction captures an individual with facial hair similar to Wright. Golden, who had known Wright for "a couple of years," spoke with Wright over the phone before the second transaction; he recognized Wright's phone number and his voice. That phone call was recorded and played at trial. Golden also communicated with Wright via text and phone calls before the third drug transaction. After searching Golden, Oakes, and the car, investigators followed Golden to Southland Drive on all three occasions and watched each transaction in real time. All three recordings show money being exchanged for an item that ultimately was determined to be cocaine. Investigators then followed Golden and Oakes back to the meeting place and collected the contraband. Golden identified Wright as the person who sold him the cocaine on all three occasions.

The fact that Oakes did not see the drugs after each transaction is not material to the outcome of this case. His only role was to drive Golden to Southland Drive and back. It is also of no moment that Golden described a search procedure that differed from that described by the investigators. Wright drew out these inconsistencies at trial and argued their importance in his motion to strike. "It is the prerogative of the trier of fact 'to resolve conflicts in the testimony.'" *Sierra v. Commonwealth*, 59 Va. App. 770, 776 (2012) (quoting *Brown v. Commonwealth*, 56 Va. App. 178, 185 (2010)). Moreover, "if reasonably fairminded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight

- 11 -

to be given the testimony, in all such cases the verdict of the [fact finder] is final and conclusive and cannot be disturbed" on appeal. *Shumate v. Mitchell*, 296 Va. 532, 550 (2018) (quoting *Gilliam v. Immel*, 293 Va. 18, 24 (2017)).

The totality of the evidence supports the trial court's finding that Wright sold cocaine to Golden on July 20, July 26, and August 1, 2018. The trial court accepted Golden's testimony and the supporting evidence as true, and we do not disturb that finding on appeal.

CONCLUSION

Because Wright failed to prove a *Brady* violation occurred, the trial court did not abuse its discretion in denying Wright's motion for a mistrial. We further hold that the evidence, viewed through the appropriate lens on appeal, was sufficient to support the trial court's finding that Wright distributed cocaine as charged. For these reasons, we affirm the convictions.

*Affirmed*.