Herman Charles BARNES,
Petitioner–Appellee,

v.

Charles E. THOMPSON, Warden,
Respondent–Appellant.

Herman Charles BARNES,
Petitioner–Appellant,

v.

Charles E. THOMPSON, Warden,
Respondent–Appellee.

Nos. 94–4001, 94–4002.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1994.

Decided June 29, 1995.

As Amended Aug. 10, 1995.

**ARGUED:** Eugene Paul Murphy, Asst. Atty. Gen., Office of the Attorney General, Richmond, VA, for appellant. Benjamin Sorrells Boyd, Piper & Marbury, Washington, DC, for appellee. **ON BRIEF:** James S. Gilmore, III, Atty. Gen. of Virginia, Office of the Atty. Gen., Richmond, VA, for appellant. Donald R. Lee, Jr., Virginia Capital Representation Resource Center, Richmond, VA, for appellee.

Before MURNAGHAN, LUTTIG, and WILLIAMS, Circuit Judges.

Reversed in part and affirmed in part by published opinion. Judge LUTTIG wrote the majority opinion, in which Judge WILLIAMS joined. Judge MURNAGHAN wrote an opinion concurring in the judgment.

## OPINION

LUTTIG, Circuit Judge:

The United States District Court for the Eastern District of Virginia vacated the death sentence of *habeas corpus* petitioner Herman Barnes, holding that the Commonwealth withheld exculpatory evidence in contravention of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and that petitioner had shown cause for his failure to present timely his exculpatory-evidence claim in the courts of the Commonwealth of Virginia. Because the record clearly supports the Virginia Supreme Court's determination that the information upon which the exculpatory-evidence claim was predicated was either known or reasonably available to petitioner, we reverse the district court's judgment granting the writ of *habeas corpus*.

I.

Barnes planned to rob Bon's Supermarket with the help of an accomplice, James Corey, on June 27, 1985. At approximately 10 p.m., Barnes approached Ricky Adams, a supermarket employee who was sweeping the parking lot, and pushed a pistol in his side. Using Adams as a shield, Barnes entered the store. Clyde Jenkins, the store's seventy-three-year-old owner, engaged Barnes in a struggle at the front of the store and Barnes shot Jenkins twice. Another store employee, Mohammed Afifi, came from the back of the store and jumped on Barnes. Barnes shook Afifi off, shot and killed him. Barnes then turned and pointed the gun at Adams. At that moment, Jenkins stirred and attempted to rise from the floor. Barnes shot Jenkins a third time and fled. Although Jenkins survived two weeks in the hospital, he too ultimately died from the gunshot wounds.

A handgun belonging to Jenkins was found under or near him when the police arrived. It had not been fired. Barnes has never asserted, nor does he today, that he saw this gun.

Barnes was tried in a bench trial in July 1986 in the Circuit Court for the City of Hampton. At trial, the victim's gun was admitted into evidence. The exact location where the police found the gun was never drawn into question and there was no testimony as to the location of the gun. The court convicted Barnes on five counts, including capital murder. In September of 1986, upon finding beyond a reasonable doubt that Barnes' "conduct in committing the offense was outrageously and wantonly vile ... in that it did involve an aggravated battery to the victim," the court sentenced Barnes to death. *See* J.A. at 124; Va.Code Ann. § 19.2–264.2. The Virginia Supreme Court affirmed his convictions and sentence on September 4, 1987, *Barnes v. Commonwealth,* 234 Va. 130, 360 S.E.2d 196 (1987), and the United States Supreme Court thereafter denied *certiorari,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988).

In October 1988, Barnes filed a petition for writ of *habeas corpus* in the Circuit Court in Hampton, raising numerous challenges to his convictions and sentence. The Circuit Court dismissed the petition, J.A. at 146–47, and the Virginia Supreme Court refused the petition for appeal, J.A. at 178. The United States Supreme Court again denied *certiorari. Barnes v. Thompson,* 497 U.S. 1011, 110 S.Ct. 3257, 111 L.Ed.2d 766 (1990).

On November 19, 1990, Barnes filed a *habeas* petition in federal court. He raised the same issues he had raised in the state petition and, in addition, claimed for the first time that the Commonwealth's failure to disclose the exact location of the victim's gun violated his right to due process under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), rendering his conviction and death sentence invalid. In June 1991, petitioner moved for, and was granted, a voluntary dismissal of his petition.

Barnes then filed a second state *habeas* petition in the Virginia Supreme Court, raising the exculpatory-evidence claims. J.A. at 179–204. The state court dismissed the petition "on grounds that no writ shall be granted on the basis of any allegation the facts of which the petitioner had knowledge at the time of filing of any previous petition. Code § 8.01–654(B)(2)." J.A. at 213.

In February 1992, Barnes filed a second federal *habeas* petition. In a memorandum opinion dated July 14, 1992, the district court dismissed seven of the ten assignments of error, but directed that an evidentiary hearing be conducted on Barnes' claims that the Commonwealth's failure to disclose the precise location of the gun violated Barnes' due process rights, that the death penalty was improperly imposed if the victim was armed, and that Barnes was denied effective assistance of counsel. J.A. at 294–332.

On January 18, 1994, following a two-day hearing, the district court held that the Commonwealth had violated Barnes' due process rights by withholding the gun's precise location and that the suppression of this evidence, although not sufficient to undermine confidence in Barnes' capital-murder conviction, was sufficiently material that the death sentence had to be vacated. Specifically, the court concluded that if the petitioner had had

the undisclosed information for use during the penalty phase of his capital trial, the sentencing court might not have found that Barnes committed an aggravated battery, and thus might not have found the "vileness" aggravating factor.[1] The district court also found that Barnes was not denied effective assistance of counsel. J.A. at 673–96.

## II.

The Commonwealth argues on appeal that the district court erred in finding that Barnes was not procedurally barred from raising the *Bagley* claim in his federal *habeas* petition, given that he defaulted this claim pursuant to Virginia Code section 8.01–654(B)(2).

 Under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and succeeding cases, if a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, he is barred from raising those claims on federal collateral review unless he can show cause for the default and prejudice resulting therefrom. *Id.* at 87–91, 97 S.Ct. at 2506–09; *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).[2] The district court properly recognized that the Supreme Court of Virginia "explicitly relied upon [the] proce-

dural bar" of Virginia Code section 8.01–654(B)(2) to dismiss the claim. J.A. at 692. The court held, however, that Barnes showed both cause and prejudice for his failure to raise the claim. In both of these determinations, we believe the district court erred.

### A.

 Under our precedents, inherent in the state court's determination that Barnes' *Bagley* claim was procedurally barred under section 8.01–654(B)(2) is a finding that no external factor existed to excuse Barnes' failure to present this claim in his first state *habeas* petition. *See Clanton v. Muncy*, 845 F.2d 1238, 1241 (4th Cir.), *cert. denied*, 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988). That is, the section 8.01–654(B)(2) default determination by the Commonwealth's highest court reflects a finding that "all of the facts on which the current petition was based were either known or available to the petitioner." *Waye v. Murray*, 884 F.2d 765, 766 (4th Cir.), *cert. denied*, 492 U.S. 936, 110 S.Ct. 29, 106 L.Ed.2d 634 (1989). This factual finding is entitled to a presumption of correctness on federal *habeas* review, *Clanton*, 845 F.2d at 1241; *Waye*, 884 F.2d at 766 (section 8.01–654(B)(2) decision is "entitled to presumptive validity under 28 U.S.C.

1. Under Virginia's death penalty scheme, a defendant may be sentenced to death if the sentencing authority finds either one of two aggravating factors: (1) "that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing serious threat to society" (the "future dangerousness" predicate), or (2) "that his conduct in committing the offense ... was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or aggravated battery to the victim" (the "vileness" predicate). Va. Code Ann. § 19.2–264.2; *see Turner v. Williams*, 35 F.3d 872, 877 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1359, 131 L.Ed.2d 216 (1995); *Boggs v. Bair*, 892 F.2d 1193, 1196–97 (4th Cir.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990).

2. The concurrence would resolve Barnes' appeal by proceeding directly to the merits of his *Bagley* claim, bypassing altogether the federal cause and prejudice inquiry. This approach, of course, is not permitted to us under Supreme Court precedent. *See Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is *barred* unless

the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law...." (emphasis added)).

The concurrence also maintains that it would "find[] that Barnes ha[d] not defaulted his *Bagley* claim in state court." *Post* at 985; *id.* at 985–86. This course is likewise foreclosed under law. A basic tenet of federal *habeas* review is that a federal court does not have license to question a state court's finding of procedural default, if based upon an adequate and independent state ground. *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989); *Ashe v. Styles*, 39 F.3d 80, 85–86 (4th Cir.1994) (Murnaghan, J., joining). The federal court may only inquire into whether cause and prejudice exist to excuse that default, not into whether the state court properly applied its own law. *Id.* The concurrence quite obviously has confused an inquiry for cause with an inquiry into the default determination.

Of course, if one does not appreciate that the cause and prejudice inquiry is mandated and that the state procedural default finding is binding on a federal court, then one will indeed believe, as the concurrence does, that within the opinion for the court there are "many statements of *dicta* and alternative holdings." *Post* at 988.

§ 2254(d)")[3] and may be rebutted only if the finding is "not fairly supported by the record," 28 U.S.C. § 2254(d)(8). *See also Stockton v. Murray*, 41 F.3d 920, 924–25 (4th Cir.1994). In reaching its determination that petitioner had shown cause to excuse his failure to raise timely the *Bagley* claim, the district court undertook its own cause inquiry *de novo*, rather than address whether the record supported the Virginia court's factual determination that no cause existed for the delay in presenting this claim. Indeed, the district court never mentioned the presumptive validity of the state court's finding that the facts underlying Barnes' claim were either known or available to Barnes before he filed his first state *habeas* petition. Had the district court undertaken the proper inquiry, according the state court findings the required deference, it would have been apparent that the record fully supports the Virginia Supreme Court's conclusion.

 Assuming *arguendo* that the location of the gun was material, the governing question for the state court was whether Barnes could have obtained the information through "reasonable and diligent investigation." *McCleskey v. Zant*, 499 U.S. 467, 498,

111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991). "The question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition...." *Id.* See also *Stockton*, 41 F.3d at 925 ("Even if [the petitioner] had not actually raised or known of the[ ] claims previously, he still cannot establish cause to excuse his default if he should have known of such claims through the exercise of reasonable diligence."); *United States v. Wilson*, 901 F.2d 378, 380, 381 (4th Cir. 1990) (Murnaghan, J.) (" '[T]he *Brady* rule does not apply if the evidence in question is available to the defendant from other sources.' ... [W]here the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." (citation omitted)).[4] The question was not, as the district court erroneously presumed, simply whether "the factual basis for petitioner's claim was reasonably unknown to petitioner's lawyers, in part because of 'some interference by officials.' " J.A. at 693 (quoting *Amadeo v. Zant*, 486 U.S. 214, 222, 108 S.Ct. 1771, 1776, 100 L.Ed.2d 249 (1988) and *Murray v. Carrier*, 477 U.S. 478, 488, 106

3. Section 2254(d) applies only to "determination[s] after a hearing on the merits of a factual issue." However, as the Supreme Court observed in *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981):

> [Section 2254(d) does not] specify any procedural requirements that must be satisfied for there to be a "hearing on the merits of a factual issue," other than that the habeas applicant and the State or its agent be parties to the state proceeding and that the state-court determination be evidenced by "a written finding, written opinion, or other reliable and adequate written indicia."

*Id.* at 546–47, 101 S.Ct. at 769.

4. While the concurrence, in discussing the merits of the *Bagley* claim, acknowledges that the defendant is obliged to exercise reasonable diligence, it believes that the duty is relinquished once the defendant asks the prosecutor for exculpatory evidence. *Post* at 984. This, too, *see supra* note 2, reflects a misunderstanding of the law, and in particular the *Brady* doctrine. *Brady* requires

that the government disclose only evidence that is not available to the defense from other sources, either directly or through diligent investigation. *Stockton*, 41 F.3d at 927; *Wilson*, 901 F.2d at 380 ("government has no *Brady* burden when facts are available to a diligent defense attorney" (parenthetical to *Lugo v. Munoz*, 682 F.2d 7, 9–10 (1st Cir.1982))). Nondisclosure, therefore, does not denote that no exculpatory evidence exists, but that the government possesses no exculpatory evidence that would be unavailable to a reasonably diligent defendant. Accordingly, it is unexceptional when this court finds that *Brady* affords a defendant no relief if he fails to pursue exculpatory evidence, notwithstanding his specific request for such evidence. *See, e.g., Stockton*, 41 F.3d at 923, 927. Of course, even where the government impermissibly withholds exculpatory evidence, a *Brady* violation does not arise unless the undisclosed evidence was material. *United States v. Bagley*, 473 U.S. 667, 669, 105 S.Ct. 3375, 3376, 87 L.Ed.2d 481 (1985); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963).

S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Even assuming "some interference by officials" (of which there is no evidence here other than the mere fact that the information was not produced), a petitioner still cannot show cause if the information sought is otherwise reasonably available. As the Court stated in *Carrier*, the official interference must have made "compliance [with the state's procedural rule] impracticable." 477 U.S. at 488, 106 S.Ct. at 2645.

Barnes, of course, knew from the inception of this case that the police recovered Jenkins' gun from the store on the night of the murders. At the preliminary hearing, Mr. El-Amin, Barnes' counsel, questioned a detective regarding the victim's revolver, and was told that the gun "was recovered at the scene, shortly after the incident occurred."[5] J.A. at 299–300. Mr. El-Amin even asked the detective whether the gun had been fired. J.A. at 300. Mr. El-Amin and the Commonwealth's attorney thereafter entered into a trial stipulation which stated:

> A .38 caliber Smith & Wesson revolver serial number 204J49, Commonwealth's Exhibit Nine was located inside the Bon's

Super Market by police the night of the shooting. Jeff Jenkins, grandson of Clyde Jenkins, and also an employee of the store, has identified this weapon as belonging to his grandfather. The weapon had not been fired.

J.A. at 57. And the revolver itself was presented into evidence as Commonwealth's Exhibit Nine, without objection from Mr. El-Amin and without him asking any question concerning the location where the gun was found. J.A. at 57, 299. Therefore, the only question is whether, knowing that the gun was recovered at the scene of the crime, Barnes either actually knew, or reasonably could have obtained, the information as to precisely where the gun was found.

The record evidence plainly supports the state court's conclusion[6] that Barnes either knew or easily could have discovered the location of the victim's gun through "a reasonable and diligent investigation." Barnes' co-defendant, James Corey, was tried less than two weeks before Barnes was tried. At Corey's trial, Officer Banks, who retrieved the gun from the supermarket, testified that the gun was found underneath the victim's body. J.A. at 577. Not insignificantly, this

---

5. The examination went as follows:

Q (by Mr. El-Amin): Detective Browning, I have some questions directed to some evidence that was obtained. Two thirty-eight caliber revolvers were recovered and submitted to the lab is that correct?

A (by Detective Browning): Yes.

Q: Where did you get them?

A: One [Jenkins' gun] was recovered at the scene, shortly after the incident occurred. The other [the murder weapon] was recovered on Saturday after the incident.

Q: Where was the one recovered Saturday?

* * * * * *

Q: All right, and the thirty-eight caliber that was found at or near the scene, had that been fired?

A: No.

J.A. at 299–300.

6. The concurrence asserts that "the state court never [made] such a finding." *Post* at 984. This assertion, tellingly made in its discussion of the merits and referring, of course, to our discussion of cause, reveals a failure on the part of the concurrence to appreciate the procedural default rule relied upon by the Virginia court and a refusal to abide by our court's own precedents. *See* discussion *supra* at 974–75. It bears repeating that a default determination under section 8.01–654(B)(2), which provides that "[n]o writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition," reflects a

finding that indeed the petitioner either knew or had available all of the facts on which the current petition was based. *See Waye*, 884 F.2d at 766; *Stockton*, 41 F.3d at 925. While this finding is often implicit (as here), it is a finding nonetheless, and must be accorded presumptive validity. *Id.* at 924–25; *see also post* at 985–86.

Even if the concurrence was correct in its assertion that a state court finding under § 8.01–654(B)(2) does not entail a finding of reasonable availability of the facts underlying the current petition, *post* at 984–85 n. 5, and even if we were not bound by our precedents to the contrary, the point is of no significance. If the state court found only that Barnes knew at the time of his previous petition that the government had not produced information as to the gun's location, this factual finding is likewise amply supported by the record—if by nothing else, by the fact that Barnes knew the gun was recovered at the scene of the crime and did not inquire into the gun's location. Therefore, the claim would still be barred.

We simply have no idea what the concurrence means when it says that our reference in *Stockton* to the petitioner's actual or constructive knowledge "does not relate to a Virginia state court finding under Virginia Code § 8.01–654(B)(2)." *Post* at 984–85 n. 5. The entire issue in *Stockton* was whether the petitioner had shown cause to excuse his procedural default under § 8.01–654(B)(2). *See* 41 F.3d at 924–25. The opinion could not be any clearer.

testimony was elicited by the same Commonwealth's Attorney whom Barnes now alleges withheld the gun's location. If petitioner's counsel had attended Corey's trial, read the trial transcript, or spoken with counsel for Barnes' codefendant, he could have learned of the gun's location. Alternatively, counsel could have obtained the allegedly "withheld" information by interviewing Officer Banks or any member of the rescue squad before trial, before sentencing, or before the first petition was filed. *See Wilson*, 901 F.2d at 381. The ease with which Mr. El–Amin could have obtained the information and the obviousness of its sources all but confirm that Barnes and his counsel made "a tactical decision" not to inquire about the location, as the district court concluded in its first memorandum opinion when addressing Barnes' allegation that his counsel was ineffective for failing to investigate the location of the gun. *See J.A.* at 323.

The facts underlying Barnes' exculpatory-evidence claim having been reasonably available to him before he filed his first *habeas* petition, the Supreme Court of Virginia's finding that Barnes failed to show cause for his failure timely to raise his claim based upon this evidence was supported by the evidence of record.

### B.

■ Even if Barnes could have shown cause, he could not have shown the requisite prejudice. To establish prejudice from an inability to present an exculpatory-evidence claim, a petitioner must demonstrate that the prosecution's withholding of the exculpatory evidence "worked to his *actual* and substantial disadvantage, infecting his [sentencing] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982).

The district court concluded that the "withheld" information prejudiced Barnes' sentencing because "the presence of a weapon on a murder victim, even if its presence is not known to the killer, is far from irrele-

vant." J.A. at 690. In a somewhat remarkable argument, the court hypothesized that,

"Had the location of the gun been known to him, Mr. El–Amin, at the sentencing phase in this case, could have presented the Court with a scenario in which Mr. Barnes was confronted with an armed man rather than a helpless one. Under such a scenario, a fact finder could infer that in firing his own gun, Mr. Barnes was motivated by an understandable fear for his safety. Even when Mr. Jenkins was on the floor after Mr. Barnes' first two shots, he was not completely incapacitated, as shown by his attempt to rise. Mr. Jenkins, although wounded, may have been within reach of a gun, and therefore may still have posed a significant danger to Mr. Barnes. In such a situation, the fact finder might well find that the nature of Mr. Barnes' actions did not constitute an aggravated battery, and/or did not merit a sentence of death.

J.A. at 692. Thus, according to the district court, prejudice of constitutional magnitude exists in denying trial counsel the opportunity to argue at sentencing that Barnes was "motivated by an understandable fear for his safety," from the "significant danger" of a seventy-three-year-old man who lay on the floor, shot twice,[7] even though Barnes has never asserted—neither when he testified at his sentencing nor even today—that he saw a gun. Putting to one side the question of whether counsel would be permitted to argue that Barnes feared for his own life, given the complete absence of evidence or even suggestion that Barnes saw Jenkins' gun, Virginia law renders a victim's mere possession of a firearm irrelevant to whether an aggravated battery was committed. The state's highest court has defined an aggravated battery as "a battery which, qualitatively and quantitatively, is more culpable than the minimum necessary to accomplish an act of murder." *M. Smith v. Commonwealth*, 219 Va. 455, 248 S.E.2d 135, 149 (1978), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979). In Barnes' direct appeal, the Virginia Supreme Court further clarified that "a killing inflicted by multiple gunshot wounds may constitute an 'aggravated battery'... where there is an appreciable lapse of time between

---

7. The first shot penetrated Jenkins' chest, collapsing the left lung and perforating the aorta, while the second shot entered the abdomen and lacerated the liver. *Barnes*, 360 S.E.2d at 199.

With these wounds, we find hollow El–Amin's contention on Barnes' behalf that after the two shots, Jenkins "was still combative and capable of joining the combat." J.A. at 548.

the first shot and the last, and where death does not result instantaneously from the first." *Barnes,* 360 S.E.2d at 203. Thus, the gravamen of aggravated battery is the number of wounds and the lapse of time between the first wound and the wound that immediately causes the death. The Supreme Court of Virginia so held even over the dissent's protest that aggravated battery should include a notion that the victim was defenseless. *Id.* at 203–05. *See also Boggs v. Bair,* 892 F.2d 1193, 1197 (4th Cir.1989) (agreeing with the Virginia court "that the number or nature of the batteries inflicted upon the victim is a proper test as to whether the defendant's conduct was outrageous or wantonly vile, horrible, or inhuman in that it involved an aggravated battery"), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990).[8] Because the mere possession of a gun by the victim is irrelevant to whether an aggravated battery has been committed, the prosecution's nondisclosure of the precise location of Jenkins' gun as perhaps within Jenkins' reach or possession could not have prejudiced Barnes' effort to establish that his murder of Jenkins did not constitute an aggravated battery.

The Virginia Supreme Court's decision in *R. Smith v. Commonwealth,* 239 Va. 243, 389 S.E.2d 871, *cert. denied,* 498 U.S. 881, 111 S.Ct. 221, 112 L.Ed.2d 177 (1990), confirms that the victim's defenselessness *vel non* is immaterial to the aggravated-battery inquiry. In that case, the defendant fatally shot a police officer, after the armed officer approached him and, in the court's words, a "gun battle" ensued. *Id.,* 389 S.E.2d at 874–75. The Virginia court held that the jury's finding of aggravated battery was "supported by the evidence of multiple wounds," *id.* at 886, *without even mentioning that the victim was not only armed, and the defendant undoubtedly knew he was armed, but, the vic-*

*tim actually shot the defendant at some point during the confrontation, id.* at 875, 883, 885. Indeed, if the defendant's account is believed, the victim shot *first* and he (the defendant) merely returned fire. *Id.* at 875, 881–82.[9] The concurrence contends that "[a] review of the cases does not disclose a single instance where Virginia courts have upheld an aggravated battery finding when, on the facts as known to the court, the defendant inflicted the wound in response to the armed resistance of the victim." *Post* at 982. Apparently, the concurrence has misread *R. Smith.*

In the same vein, the concurrence seriously misreads *Chandler v. Commonwealth,* 249 Va. 270, 455 S.E.2d 219 (1995), as clearly supporting the proposition that "[a]ggravated battery in Virginia for purposes of a finding of 'vileness' is premised on the existence of a victim who is not armed and not resisting." *Post* at 982. The concurrence believes that this proposition is clearly established by the observation in that case that "[s]entencing bodies in this Commonwealth have often imposed the death penalty where the victim was a store clerk, was unarmed, provided little or no resistance, and was killed at literally point blank range," *Chandler,* 455 S.E.2d at 227. On its face, this language does not permit the inference drawn by the concurrence. When the passage is understood in context, it is even clearer that the passage in no way can be read as supporting the view of Virginia law taken by the concurrence. The court made this observation in the course of a proportionality review, during which it compares Chandler's crime and sentence to comparable crimes and sentences of other defendants. The court of course noted that in similar contexts—where the victim was unarmed and non-resistant—that the death sentence had been imposed; those were facts of Chandler's crime. Those circumstances, however, are no more *necessary* for imposing the death penalty than that the victim be a "store clerk," a fact that was also

---

8. Notably as it bears on the question of prejudice, the Commonwealth never argued at sentencing that Mr. Jenkins was defenseless when he was shot.

9. The concurrence suggests that we "inexplicably rel[y] on defendant Smith's version of events." *Post* at 982 n. 3. We do not. The Virginia court presented the facts, as undisputed, that the victim carried a nine-millimeter revolver, 389

S.E.2d at 875, and that the defendant was shot by that revolver, *id.,* at 874–75, 874 n. 3. The Virginia court concluded further that the evidence entitled the jury to believe, as it did, that the defendant knew the victim was an armed police officer. *Id.* at 878, 880–81. Moreover, the testimony of Officer James K. Ryan suggested, based upon the distinctive sounds of the gun fire, that the defendant continued shooting after the officer-victim shot his handgun. *Id.* at 874, 874 n. 3.

recited by the court. If there were any remaining question as to the irrelevancy of *Chandler* to the case before us, it should be put to rest by the fact that *Chandler* does not in any way even discuss the "vileness" aggravating factor with which we are concerned, because Chandler was sentenced to death based on the future dangerousness predicate. *Id.* at 221, 227; *see also supra* note 1.

### III.

■■■■ In his related appeal, Barnes claims that he was denied effective assistance of counsel because his trial counsel failed to discover and present all available mitigating evidence. Specifically, Barnes contends that a proper investigation would have revealed that he was reared in a violence-ridden and abusive home, and that he was mentally impaired. At the federal evidentiary hearing on this claim, Barnes presented examples of the evidence he contends El–Amin should have elicited, including testimony from his mother, grandmother, and half-brother, and from three experts, a psychiatrist, a neuropsychologist, and a psychiatric social worker.[10] The district court correctly concluded that Barnes had failed to satisfy the first requirement of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that "in light of all the circumstances, the identified acts or omissions [of counsel be] outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. at 2066. J.A. at 676–84.[11]

■■■■ The Supreme Court has provided guidance for determining whether an attorney's investigation into matters that might aid his client constitutes deficient representation:

[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically upon such information. . . . [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066. In particular as it relates to Barnes' claim, trial counsel is not obligated to seek a psychological examination and may rely on the truthfulness of his client and those whom

---

10. The Commonwealth objected to the admission of some of this evidence, arguing that under *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), a federal court is limited to the record presented to the state court, and since Barnes had not presented the state court with any psychiatric or neurological evidence, the reports of the psychiatrist and the neuropsychologist should not be considered by the district court. J.A. at 340–41. The district court did not rule directly on the respondent's objection, but instead stated that it would "hear the evidence" but not necessarily "consider" it. J.A. at 343. For purposes of this decision only, we assume that admission of this evidence was not error.

11. Under *Strickland,* a defendant, or in this case a petitioner, asserting a claim of ineffective assistance of counsel must show both that his attorney's performance was deficient and that it prejudiced the defense. 466 U.S. at 687, 104 S.Ct. at 2064. To show deficiency, the petitioner must demonstrate that his attorney's representation "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. In order to show prejudice where a petitioner is challenging his death sentence, he must establish a reasonable probability that, absent counsel's errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence— would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *See id.* at 695, 104 S.Ct. at 2068.

he interviews in deciding how to pursue his investigation. *See Clanton v. Bair*, 826 F.2d 1354, 1358 (4th Cir.1987), *cert. denied*, 484 U.S. 1036, 108 S.Ct. 762, 98 L.Ed.2d 779 (1988).

Applying this standard, it is evident, as the district court concluded, that El–Amin's decision to limit his investigation and to not present certain mitigating evidence was reasonable, based on his assessment of the law and his interviews with Barnes and his family. El–Amin testified that he reviewed the relevant Virginia law and concluded that his primary task at the sentencing hearing was to prevent a finding of "future dangerousness," since he believed that it was less likely that the court would find that the circumstances of these murders were vile or constituted an aggravated battery. J.A. at 547–49. This tactical approach required that El–Amin portray Barnes as a sane or nonviolent individual. In preparing for this presentation, El–Amin interviewed Barnes on several occasions and questioned his mother and grandmother repeatedly, all of whom spoke positively about Barnes' family background, never suggesting in any way that his mental health was in doubt. J.A. at 549–50, 555. At the district court hearing, El–Amin recounted that,

Herman spoke well of his background. I learned from him and his mother and his grandmother that he had what I understood at the time to be a supportive family; that he was very, very dependent, almost to a fault. He had extreme love and a protective relationship with his mother and grandmother.... So there was never any indication of any ill will that was directed toward his background in terms of growing up other than just being influenced by the streets.

J.A. at 555. Barnes' probation officer from Philadelphia confirmed El–Amin's belief that the family situation was strong, and nothing in the presentence report, arrest records, or probation records refuted this impression. J.A. at 560–61, 566–67. Simply, El–Amin did not seek evidence of childhood abuse or mental impairment because there was "no indication" that such evidence existed and because such evidence would not have been "germane

to [his] defense." J.A. at 556. Indeed, he believed that evidence of pathology would have been counterproductive to his strategy. As the district court recognized, El–Amin "made a tactical decision not to [pursue a psychiatric or similar evaluation]," J.A. at 683–84, because it would have been "cross-purpose evidence" that might have led the sentencing authority to conclude that Barnes posed a continuing threat to society, J.A. at 554. Barnes, thus, is the paradigm of "a defendant [who] has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. *See Burger v. Kemp*, 483 U.S. 776, 793–95, 107 S.Ct. 3114, 3125–26, 97 L.Ed.2d 638 (1987).

El–Amin decided not to present the good character evidence that he learned from Barnes' mother and grandmother because he believed that if vileness were found, traditional character evidence, under the circumstances and given its source, would not lead the judge to impose life imprisonment. J.A. at 559. This was likewise a reasonable tactical choice, *see Fitzgerald v. Thompson*, 943 F.2d 463, 470 (4th Cir.1991), *cert. denied*, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992); *Turner v. Williams*, 35 F.3d 872, 900–03 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1359, 131 L.Ed.2d 216, 1995 WL 23496 (U.S., Mar. 20, 1995). Barnes has not overcome the presumption that his counsel's decision constituted sound trial strategy. *See Strickland*, 466 U.S. at 699–700, 104 S.Ct. at 2070–71; *Burger*, 483 U.S. at 788–96, 107 S.Ct. at 3122–27; *Bunch v. Thompson*, 949 F.2d 1354, 1363–65 (4th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992).

Of course, even if Barnes were able to show that El–Amin should have presented the evidence of abuse and dysfunction, it is unlikely that he could have satisfied *Strickland*'s second requirement of a "reasonable probability" that the outcome would have been different but for El–Amin's failure to develop this case in mitigation. As the Supreme Court observed in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), evidence of a defendant's mental impairment "may diminish his blameworthiness for his crime even as it indicates that there is

a probability that he will be dangerous in the future." *Id.* at 324, 109 S.Ct. at 2949. El-Amin testified, and the district court agreed, that producing evidence of Barnes' mental condition increased the likelihood that the court would find that Barnes posed a future threat. *See* J.A. at 554 (El-Amin testifying that he was trying to portray Barnes "as a non-violent individual.... I don't want to create a record of violence on his part. Because that would have thrown me into the future dangerousness issue and ... I was trying to minimize that evidence."). Thus, the sentencing authority could well have found in the mitigating evidence of mental illness or history of abuse, sufficient evidence to support a finding of future dangerousness.

### CONCLUSION

The judgment of the district court granting the petitioner's writ of *habeas corpus* is reversed and the case is remanded with instructions to reinstate the death sentence. That portion of the district court's order finding that the petitioner received effective assistance of counsel is affirmed.

*REVERSED IN PART AND AFFIRMED IN PART.*

MURNAGHAN, Circuit Judge, concurring in the judgment:

The majority today announces a new rule of Virginia state law—that the "vileness" predicate may be met in sentencing a capital defendant to death irrespective of whether the defendant observed that the victim was armed and resisting at the time the defendant fired the final shot, so long as the defendant inflicts a number of wounds and there is a lapse of time between the first wound and the wound that ultimately causes the death. Because I do not believe that the

federal judiciary should announce a new rule of state criminal law when the state's highest court has indicated that it would not announce the same rule, I cannot join Part II of the majority opinion. However, because Barnes' *habeas* counsel has failed to present affirmative evidence that Barnes may have seen the victim drawing a gun, Barnes has not borne his burden of showing a reasonable probability that the outcome of his sentencing proceeding would have been different had the prosecution disclosed the location of the victim's gun. Therefore, although I do not agree with the majority's statement as to what constitutes proof of vileness, I concur in the result reached by the majority in Part II.

A. *Barnes'* Bagley *Claim:*[1] *The Majority Opinion.*

The majority states that "Virginia law renders a victim's mere possession of a firearm irrelevant to whether an aggravated battery was committed." Op. at 977. While strictly speaking, that is true where mere possession alone of a firearm is concerned, *see R. Smith v. Commonwealth,* 239 Va. 243, 389 S.E.2d 871 , *cert. denied,* 498 U.S. 881, 111 S.Ct. 221, 112 L.Ed.2d 177 (1990), the inference drawn by the majority—that a victim's brandishing of a weapon to resist a defendant is also irrelevant—is not a correct statement of Virginia law.[2] Rather, Virginia courts have held only that the victim's *mere* possession of a firearm is irrelevant where a defendant is not threatened by the victim's firearm. *See R. Smith,* 389 S.E.2d at 874, 883 (upholding aggravated battery instruction where defendant shot an armed police officer after stating that he would shoot the first police officer he saw and that he hoped he would be shot in return).

1. Because the outcome of Barnes' *Bagley* claim is dispositive of my decision to concur with rather than dissent from the majority opinion, I discuss it first. I reach Barnes' *Bagley* claim because, as I will discuss below, I find that Barnes did not default the claim in state court.

2. The majority hedges on its holding that the victim's use of a weapon is irrelevant by responding to Barnes' argument concerning the threat posed to Barnes by the victim here. The majority states that it "find[s] hollow El-Amin's contention ... that after the two shots, Jenkins 'was still combative ...'" Op. at 977 n. 6. However, the majority fails to note that it was the prosecution's witness, Ricky Adams, who testified that Jenkins was attempting to rise, and no medical authority testified to the contrary. Not being a medical doctor myself, I do not speculate as to whether a man who has been shot and attempts to rise can shoot a handgun, but instead accept the testimony presented at trial.

The definition of "aggravated battery" in Virginia is "a battery which, qualitatively and quantitatively, is more culpable than the minimum necessary to accomplish an act of murder." *M. Smith v. Commonwealth,* 219 Va. 455, 248 S.E.2d 135, 149 (1978), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979). The Virginia Supreme Court, on direct appeal in the instant case, did not overrule *M. Smith,* but rather held that "a killing inflicted by multiple gunshot wounds *may* constitute an 'aggravated battery' ... where there is an appreciable lapse of time between the first shot and the last, and where death does not result instantaneously from the first." *Barnes v. Commonwealth,* 234 Va. 130, 360 S.E.2d 196, 203 (1987) (emphasis added), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). The Virginia Court in Barnes' direct appeal believed that the victim was "unarmed," i.e. had no firearm, *Barnes,* 360 S.E.2d at 201, and has since cited *Barnes* in other cases involving unarmed victims, *see, e.g., Thomas v. Commonwealth,* 244 Va. 1, 419 S.E.2d 606, 619, *cert. denied,* —— U.S. ——, 113 S.Ct. 421, 121 L.Ed.2d 343 (1992). A review of the cases does not disclose a single instance where Virginia courts have upheld an aggravated battery finding when, on the facts as known to the court, the defendant inflicted the wound in response to the armed resistance of the victim.[3] To the contrary, the Supreme Court of Virginia has stated that "[s]entencing bodies in this Commonwealth have often imposed the death penalty where the victim was a store clerk, was unarmed, provided little or no resistance, and was killed at literally point blank range." *Chandler v. Commonwealth,* 249 Va. 270, 455 S.E.2d 219, 227 (1995). Although the Virginia courts have yet to rule on a case in which, on the facts known, the defendant reacted to an armed and resisting victim, the implication of the reported cases coupled with the language in *Chandler* is clear: Aggravated battery in Virginia for the purposes of a finding of "vileness" is premised on the existence of a victim who is not armed and not resisting.

As a federal court, we are not free to make state law which diverges from the path that the highest court of the state has indicated it would take if faced with the question. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967) ("[When] the underlying substantive rule involved is based on state law ... the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, [the federal court] may be said to be, in effect, sitting as a state court."). Certainly within the greater power to reject the death penalty in its entirety is the lesser power of the states to limit the scope of aggravating factors which may result in the penalty. The role of the federal judiciary is merely to insure that the state system for imposing the death penalty comports with constitutional limitations. *See, e.g., Gregg v. Georgia,* 428 U.S. 153, 174–75, 96 S.Ct. 2909, 2925–26, 49 L.Ed.2d 859 (1976). In the context of reviewing a statutory aggravating factor such as the "aggravated battery" component of the vileness predicate at issue here, the task is to check that the factor "furnish[es] principled guidance for the choice between death and a lesser penalty." *Richmond v. Lewis,* —— U.S. ——, ——, 113 S.Ct. 528, 534, 121 L.Ed.2d 411 (1992). It is not within our authority to broaden the scope of a state's chosen definition of an aggravating factor in its sentencing scheme. *Cf. Maynard v. Cartwright,* 486 U.S. 356, 364–65, 108 S.Ct. 1853, 1859–60, 100 L.Ed.2d 372 (1988) (refraining from directing state as to which factors may be aggravating factors for imposition of death penalty purposes, but merely imposing the constitutional requirement that the factors chosen by the state may not be vague).

---

**3.** The majority's contrary reading of *R. Smith* inexplicably relies on defendant Smith's version of events, a version which was not supported by the physical evidence, *see R. Smith,* 389 S.E.2d at 881–82 ("[O]nly Smith fired a rifle and ... the first shots fired were 'real sharp ... cracks'

indicative of rifle fire....''), and which was rejected by the jury, *see id.* at 882 ("[T]he jury was entitled to disbelieve Smith's testimony and find it was [Smith] who fired the first shot."). "Apparently," the majority "has either misread or failed to read *R. Smith,"* Op. at 978.

Therefore, I cannot join the majority's opinion in its assertion of what Virginia law is.

### B. *Barnes' Bagley Claim: Materiality.*

However, I too conclude that Barnes' *Bagley* claim must fail, but on other grounds. A petitioner in state confinement may assert a claim on federal *habeas* review only if he or she either has not defaulted the claim in state court, or has shown cause and prejudice for the default. *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). A petitioner may then prove the merits of his or her claim. To assert a *Bagley* claim successfully, a petitioner must show that the prosecution violated its duty to disclose exculpatory evidence, and that the evidence was material. *See United States v. Bagley,* 473 U.S. 667, 669, 105 S.Ct. 3375, 3376, 87 L.Ed.2d 481 (1985); *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Materiality under *Bagley* is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. at 682, 105 S.Ct. at 3382; *see also Adams v. Aiken,* 965 F.2d 1306, 1314 (4th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2966, 125 L.Ed.2d 666 (1993). The majority finds that Barnes has procedurally defaulted his *Bagley* claim in state court, and that he has shown neither cause nor prejudice for the default. Although the majority is mistaken as to those default issues, I concur in the result reached by the majority because I find that Barnes has failed to prove the materiality prong of his *Bagley* claim.

I would find that Barnes has failed to demonstrate materiality in the instant case, not because the victim's firearm is irrelevant as a matter of course, but because Barnes has failed affirmatively to produce any evidence that he saw the firearm at the time of the shooting. Under *R. Smith,* the defendant cannot avoid an aggravated battery finding by the mere fact that the victim possessed a gun—the sentencing judge must

also find some reasonable belief that the defendant may have shot the victim in response to resistance by the victim. *See* Va. Code § 19.2–264.4C (Commonwealth must prove aggravating factors beyond a reasonable doubt). Because, on *habeas* review, it is Barnes' burden to show materiality, he must come forward with evidence that he saw that the victim was armed and resisting. The district court's reasoning, that the presence of the gun would have raised reasonable doubt in the mind of the sentencing judge even if Barnes could not have seen the gun, is not sound law. In conformity with Virginia's Code of Professional Responsibility, Barnes' trial attorney could have argued that the presence of the gun was relevant to "vileness" only if he believed that Barnes may have seen the gun and reacted to it. *See* Pt. 6, § II, Rules of the Supreme Court of Virginia, Disciplinary Rule 7–102 ("[A] lawyer shall not ... [k]nowingly use ... false evidence [or] [k]nowingly make a false statement of law or fact."). Barnes, however, has not presented any evidence that he may have seen the gun, and thus Barnes has failed to carry his burden of showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383.

In light of my finding that Barnes has not met the materiality prong of his *Bagley* claim, I need not decide whether he has shown a violation of the duty to disclose the location of the gun. However, in order to respond to the claims made by the majority in its alternate holdings, I discuss the issue briefly.

### C. *Barnes' Bagley Claim: Duty to Disclose.*

If it were necessary to decide the question, I would find that Barnes has shown the first prong of his *Bagley* claim—that the prosecution violated its duty to disclose exculpatory evidence under *United States v. Bagley* and *Brady v. Maryland.*[4] The government's

---

4. Although the majority conflates the two prongs of a *Brady/Bagley* claim, *see* op. at 975 n. 3, I take the analytically more rigorous approach of analyzing the duty-to-disclose prong of Barnes' claim separately from my analysis above of the materiality prong. Both approaches should

duty to disclose exculpatory evidence applies to evidence material either to guilt or to punishment, *see Brady,* 373 U.S. at 87, 83 S.Ct. at 1196, whether the information is in the hands of the prosecutor or the police, *Boone v. Paderick,* 541 F.2d 447, 450–51 (4th Cir.1976), *cert. denied,* 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). The duty applies even to information in the public record, *Amadeo v. Zant,* 486 U.S. 214, 224, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988); *Anderson v. South Carolina,* 709 F.2d 887, 888 (4th Cir.1983). An incomplete response by the government to a request for exculpatory evidence violates the duty to disclose: "[A]n incomplete response to a specific request not only deprives the defense of certain evidence, but also has the effect of representing to the defense that the evidence does not exist. In reliance on a misleading representation, the defense might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3384. It is true that "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." *United States v. Wilson,* 901 F.2d 378, 381 (4th Cir.1990). However, a reasonable defendant would not have looked into the matter any further once the prosecuting attorney represented that the Commonwealth did not possess exculpatory evidence. The Virginia Code of Professional Responsibility prohibits all attorneys from making false statements of fact and from concealing or failing to disclose information which an attorney is required to reveal. *See* Pt. 6, § II, Rules of the Supreme Court of Virginia, Disciplinary Rule 7–102. A defense attorney may reasonably assume a prosecuting attorney is obeying the Code of Professional Responsibility.

Evidence of the location of the victim's gun here was supplied to the prosecution by a police officer in a police report. Barnes' trial counsel made a *Brady* request for "[a]ny material or information which would tend to reduce the punishment of the defendant, including but not limited to ... any ... mitigating circumstances favorable to the defendant." The prosecution answered inaccurately that it had no such information. The prosecution also furnished defense counsel with the misleading stipulation quoted by the majority. Op. at 976. The majority's statement that "[t]he record evidence plainly supports the state court's conclusion that Barnes could have discovered the location of the victim's gun through 'a reasonable and diligent investigation,' " op. at 976–77, is doubly inaccurate. Not only did the state court never make such a finding,[5] but no evidence was submitted to substantiate the Common-

reach the same result—if and only if a petitioner fails one of the *Brady/Bagley* prongs, he or she should also fail the majority's conflated test—but my approach makes clear, where the majority's does not, the precise rationale for the failure of a claim.

5. The majority's belief that a state court's default determination under a state law providing that "[n]o writ shall be granted on the basis of any allegation the facts of which petitioner *had knowledge* at the time of filing any previous petition," Va.Code § 8.01–654(B)(2) (emphasis added), "reflects a finding that indeed the petitioner *either knew or had available* all of the facts on which the current petition was based," op. at 976 n. 5 (emphasis added), relies on a specious reading of the English language. Whether one uses *Black's* or *Webster's,* the words "had knowledge" do not mean "either knew or had available." The majority's citations to *Waye* and *Stockton* do not support its Orwellian attempt to rewrite our dictionaries. For example, the *Stockton* opinion refers to a petitioner's actual and constructive knowledge in the context of discussing whether or not the petitioner has shown cause for his state procedural default such that the merits of his claim may be examined in federal court; *Stockton* 's reference does not relate to a Virginia state court finding under Virginia Code § 8.01–654(B)(2). *Stockton v. Murray,* 41 F.3d 920, 925 (4th Cir.1994). The *Stockton* opinion does contain, in *dicta,* a parenthetical explanation of the holding in *Waye* which comports with the majority's Orwellian reading; however, not only is the *Stockton* parenthetical *dicta,* it is an inaccurate reading of *Waye:* as I explain below, *Waye* did not, and cannot in light of the fact that the federal courts are not free to rewrite state law, change the standard for procedural default of state *habeas* claims in Virginia. *See infra* n. 7. Rather, as I correctly state below, such a default determination by the Virginia Supreme Court in the instant case reflects an implicit, although erroneous, finding that Barnes "had knowledge" of the prosecutor's nondisclosure. *See infra.*

wealth's argument that Barnes' trial counsel reasonably would have interviewed police officers, attended the trial of the accomplice (Corey), read the transcript from his trial, etc.[6] Trial counsel had no reasonable duty to inquire about police officers' knowledge when he had been told simply that there was an unfired gun in the store, since, as he stated in unrebutted testimony, many storekeepers have guns behind the counter. Moreover, no evidence was presented to show that a reasonable defense counsel should be expected to sit in on the trial of an accomplice ten days before the trial of his own client—to the contrary one might think that the attorney must be preparing his client's evidence and his cross-examination of the prosecution's witnesses during the days immediately preceding trial. Because no evidence was produced showing that a transcript would have been immediately available from the accomplice's trial, the information was not shown to be reasonably available from that source either. Counsel for the accomplice never testified, so there was also no evidence as to the availability of information from that source. The Commonwealth never put its own prosecuting attorney on the stand, and so failed even to show that, if Barnes' trial counsel had asked the prosecuting attorney where the gun was, the prosecuting attorney would have answered truthfully after having misled trial counsel with the prior statements. Thus the first prong of *Bagley*, the violation of a duty to disclose, has been made out here.

### D. *Barnes' Bagley Claim: State Procedural Default.*

As noted above, I find that Barnes has not defaulted his *Bagley* claim in state court.

Under Virginia state law, a *habeas* claim is procedurally defaulted if a petitioner had knowledge of the facts upon which the claim is based at the time of filing any previous *habeas* petition. Va.Code § 8.01–654(B)(2). The majority misstates the law in this regard; Virginia law bars successive petitions where the facts *were known* to petitioner previously, not where the facts were "available," op. at 975, to the petitioner previously.[7] Likewise, the majority's contention that *McCleskey v. Zant,* 499 U.S. 467, 498, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991), provides the standard regarding procedural default for the state court reviewing a successive state *habeas* petition, op. at 975, is without merit. The United States Supreme Court in *McCleskey* announced the standard to be applied to successive *federal habeas* petitions; the United States Supreme Court is without authority to limit the ability of state courts to hear successive *state habeas* petitions. Rather, the law in Virginia restricts successive *habeas* petitions to those raising both "new ground[s] for relief," *see Hawks v. Cox,* 211 Va. 91, 175 S.E.2d 271, 273 (1970), and facts not known to the petitioner at the time of filing an earlier *habeas* petition, Va.Code § 8.01–654(B)(2). Both of those requirements were met here.

In the instant case, Barnes had filed a first state *habeas* petition raising, *inter alia,* ineffective assistance of counsel, but not raising nondisclosure of the gun's location. Barnes did not discover the location of the gun, and the nondisclosure, until after his first *habeas* petition had been denied. He then filed his second state *habeas* petition, raising for the first time in state court the nondisclosure

---

6. The prosecution must bear the burden of showing that a reasonable investigation would have disclosed the concealed evidence because, when the defense attorney did not know about the evidence, only the prosecution can show where the evidence was located.

7. In an apparent attempt to replace the Virginia state standard for procedural default with the federal standard for cause, the majority quotes out of context the following statement from *Waye v. Murray*—"all of the facts on which the current petition was based were either known or available to the petitioner." In context, the statement refers both to findings regarding cause and prejudice made by a federal district court (i.e., a finding that the facts were "available" to the petitioner), and to findings regarding state procedural default made by the Virginia Supreme Court in that case (i.e., a finding that the facts were "known" to the petitioner); the statement does not refer, as the majority attempts to imply, to a state court finding of default alone. *See Waye v. Murray,* 884 F.2d 765, 766 (4th Cir.), *cert. denied,* 492 U.S. 936, 110 S.Ct. 29, 106 L.Ed.2d 634 (1989). In the instant case, the federal court found that the facts were unknown, and the state court, erroneously, found that the facts were known.

issue. The Virginia Supreme Court held that the Virginia Code section cited above, Va. Code § 8.01–654(B)(2), barred Barnes' petition, thus implicitly finding that Barnes had knowledge of the prosecutor's nondisclosure of the location of the gun at the time he filed his first state *habeas* petition. Although the state court's factual finding with regard to prior knowledge is entitled to a "presumption of correctness" from the federal courts, *Clanton v. Muncy*, 845 F.2d 1238, 1241 (4th Cir. 1988), that presumption is rebutted when a federal court concludes that the finding is "not 'fairly supported by the record.'" *Demosthenes v. Baal*, 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990) (*quoting* 28 U.S.C. § 2254(d)(8)).[8] Here, the determination that Barnes knew about the *Brady* materials when he filed his first state *habeas* petition is not supported by the record, as the prosecution's knowledge of the location of the gun was not disclosed to Barnes until 1990, after his first state *habeas* petition had been denied.[9]

In light of the finding that Barnes has not defaulted his *Bagley* claim in state court, I need not decide whether, if he had defaulted the claim, he has shown cause and prejudice for the default. However, in order to respond to the claims made by the majority in its alternate holdings, I discuss the issue briefly.

---

**8.** The majority incorrectly claims that "a federal court does not have license to question a state court's finding of procedural default." Op. at 974, n. 2. Rather, as the language I have quoted from *Clanton* and *Demosthenes* demonstrates, the federal court must engage in a review of state court factual findings under the "fairly supported by the record" standard.

**9.** In what might charitably be termed a telling slip of the tongue, the majority opinion claims that I have confused the inquiry into the existence of a state procedural default with an inquiry into cause. *See* op. at 974 n. 2. In fact, it is the majority which attempts to foist the federal standard for cause onto the Virginia state standard for default. I respect the Virginia state standard for default as stated in the Code of Virginia, and I analyze the federal issue in turn.

An example using simple facts may help to explain why default and cause are distinct questions. Suppose, for example, that rather than dismissing Barnes' state *habeas* petition for fail-

---

### E. *Barnes'* Bagley *Claim: Cause and Prejudice.*

Even if Barnes had procedurally defaulted his claim in state court, I would find that Barnes has amply demonstrated cause for the default. The majority's conclusion that Barnes' trial counsel made a "tactical" decision not to discover the location of the victim's handgun, op. at 977, is unsupported by the record. Neither the Commonwealth nor the majority has come forward with a single tactical reason why a defense attorney would not want to discover the location of a weapon possessed by a victim. Rather, trial counsel's uncontradicted testimony in the district court establishes that he concluded, based on statements made by the prosecution, that the victim's firearm was not at the immediate scene of the crime.

The statements by the prosecution included the stipulation offered by the prosecution which is quoted by the majority, and the prosecution's response to trial counsel's aforementioned request for any material or information which would tend to reduce the punishment of the defendant. It was reasonable for trial counsel to believe the prosecution's answer that there was no such material or information in its possession, rather than interviewing the police who had been at the scene. It was reasonable for trial counsel to busy himself preparing for Barnes' trial rather than attending the trial of Barnes' code-

---

ure to make his *Bagley* claim at the time he filed his first state *habeas* petition, the Virginia Supreme Court instead had dismissed the petition because it was filed on a Tuesday. Suppose also that, for purposes of administrative convenience, Virginia had a procedural rule requiring that *habeas* petitions may only be filed on Mondays. Suppose further that Barnes' petition had in fact been filed on a Monday, but due to the fact that the Virginia Supreme Court had examined the calendar for a different year, the Virginia Court mistakenly believed that Barnes had filed on a Tuesday. In such a case, federal *habeas* review would not be barred for precisely the same reason it is not barred here: Barnes has not procedurally defaulted gin state court. Because Barnes never filed on Tuesday, he never defaulted; it would be inaccurate for the federal court to "confuse" the inquiry by saying that Barnes has shown cause for a [nonexistent] default. The same is true here; under the law of the state of Virginia, Barnes never defaulted his *Bagley* claim.

fendant, Corey, which took place ten days before Barnes' trial. No more than " 'a showing that the factual or legal basis for a claim was not reasonably available to counsel,' " *McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)), is required.

In fact, had trial counsel's decision not to investigate further and to rely upon the assumed honesty of the prosecution's answer been unreasonable, then Barnes would have made a viable showing of the unreasonable performance prong of an ineffective assistance of trial counsel claim for failure to investigate the location of the firearm. The majority wants to have it both ways, finding both reasonable performance as to Barnes' claim of ineffective assistance of counsel for failure to investigate the location of the gun, op. at 977, and lack of reasonable investigation as to Barnes' *Bagley* claim, op. at 977; I cannot concur in such inconsistent findings where, as here, there has been no showing of a tactical decision by trial counsel not to investigate the location of the gun, and the prosecution's failure to disclose the location of the gun was an objective factor external to Barnes' defense which impeded his counsel's efforts to raise the issue at trial. *Cf. Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645 (holding that ineffective assistance constitutes cause, but mere attorney tactical error is not necessarily cause, unless "some objective factor external to the defense" such as " 'some interference by officials,' made compliance impracticable" (internal citations omitted)).

However, for the same reasons that I do not find materiality shown as to Barnes' *Bagley* claim, *see supra,* if Barnes had defaulted the claim in state court, I would find that he was not prejudiced by the default.

F. *Barnes' Ineffective Assistance Claim as to his Trial Counsel's Failure to Present Evidence of Mitigating Factors at Sentencing.*

As to Part III, I concur in the majority's finding that Barnes has not shown that his attorney's performance fell below an objec-

tive standard of reasonableness. I therefore find it unnecessary to reach the question of whether Barnes was prejudiced by his attorney's performance, and I do not join the majority's opinion to the extent that it discusses whether the outcome of Barnes' sentencing would have been different had his attorney's performance been different. However, again to respond to the conclusions made by the majority, I will discuss the prejudice prong of Barnes' ineffective assistance of counsel claim briefly.

The standard for showing prejudice is less than a preponderance standard; the petitioner must show merely that trial counsel's ineffectiveness "undermine[s] confidence in the outcome." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). Moreover, review of the district court's findings of prejudice on an ineffective assistance of counsel claim is *de novo.* See *Fields v. Attorney General of the State of Maryland,* 956 F.2d 1290, 1297 n. 18 (4th Cir.1992) (listing standards of review applicable to *habeas* proceedings).

If it were necessary to decide the question, I would find that the failure to raise evidence of past abuse was not prejudicial, because past abuse has often been found by Virginia courts to have little mitigating weight. *See, e.g., Jenkins v. Commonwealth,* 244 Va. 445, 423 S.E.2d 360, 371 (1992) (upholding death sentence in face of evidence of tragic upbringing of defendant), *cert. denied,* —— U.S. ——, 113 S.Ct. 1862, 123 L.Ed.2d 483 (1993); *Correll v. Commonwealth,* 232 Va. 454, 352 S.E.2d 352, 360 (upholding death sentence in face of evidence of an unfortunate home situation and troubled childhood), *cert. denied,* 482 U.S. 931, 107 S.Ct. 3219, 96 L.Ed.2d 705 (1987). However, I would find prejudicial the failure to raise evidence of Barnes' mental defects and his past responsiveness to a juvenile rehabilitation program. The majority states that evidence of mental defects could have led to a finding of dangerousness, and therefore the failure to present the evidence of mental defects was not prejudicial to petitioner. However, the evidence regarding Barnes' mental defects is that he has brain damage and lowered intellectual functioning, not some type of mental illness which

might render him dangerous. Mental incapacity is a statutory mitigating factor in Virginia, *see* Va.Code § 19.2–264.4(B), and the Commonwealth itself has admitted that, because of petitioner's limited criminal record, it was "highly unlikely" that future dangerousness would have been found. Reply Br. of Appellant at 21. If it was "highly unlikely" that future dangerousness would have been found with no evidence of Barnes' low intelligence and brain damage, then surely it still would have been unlikely that future dangerousness would have been found with the evidence of his mental defects. If this were not the case, all "mental defects," whether mental illness or low intelligence, would be *per se* aggravating factors, not a mitigating factor. The majority does not state whether or not it believes that the failure to present evidence of potential for rehabilitation was prejudicial, but in light of Barnes' youth (he was 21 years old), I would find the failure to present the evidence was prejudicial.

*Conclusion.*

In sum, because Barnes has not shown materiality of the location of the victim's gun, and because he has not shown unreasonable performance by his trial counsel, I concur in the result reached by the majority, reversing the writ of *habeas corpus* and remanding with instructions to reinstate the death sentence. However, I also respectfully disagree with several assertions of law made by the majority, as I have noted throughout. I have been presented with many statements of *dicta* and alternative holdings which have led to the necessity of an attempt to rebut the erroneous statements which need not have been made in the first place.